## GAYLE, Adm'r, &c. v. ELLIOTT.

1. It is not a good plea by an administrator, to an action against him, that he had resigned the trust—the plea should also alledge, either that he had

administered the assets that came to his hands, or that he had delivered them to his successor.

2. The duties and authority of an administrator, as such, cease with the resignation of his trust, and the settlement of his accounts, but the law makes it his duty to preserve the estate, and he can only absolve himself from liability, by delivering it to his successor.

3. An administrator, *cum testa. an.* cannot relieve himself from the obligation to take care of the estate for the period intervening between his resignation and the appointment of a successor, by showing that the property remained where the testator required it should be. Nor will the clandestine removal of property, during that period, absolve him from liability to account for it, unless he show that he took such care of it as a man of prudence would have taken of his own estate. It is not enough for such administrator to show that his successor went into the possession of the testator's lands under the provisions of the will, even if this is of value sufficient to satisfy the plaintiff's demand; for the statute only entitles him to his discharge upon the delivery of " all the assets or effects which shall not have been duly administered or applied."

Error to the Circuit Court of Clarke.

THIS was an action of debt at the suit of the defendant in error, on a bill single executed by the plaintiff's testator on the 25th March, 1841, for the payment of $1,054 75, one day after date.

The defendant below pleaded—1. *Nil debit.* 2. The statute of limitations. 3. That since last term of the court, to wit, in January, 1846, he applied to the judge of the orphans' court of Clarke, to make a final settlement of his administration, and to be discharged; that he thereupon tendered his resignation as administrator, &c. which was accepted, and the Judge caused such proceedings to be had, that a full and final settlement of the defendant's accounts as administrator, &c. were had, and he finally discharged from the trust, by the judgment and decree of the court. *Further*, that John B. Savage was, upon defendant's resignation and discharge appointed administrator *de bonis non*, &c. upon the testator's estate; and is now duly qualified and acting as such, &c. 4. That the defendant made a full and complete settlement with the orphans' court, on which a final decree was rendered; whereupon he resigned his administration and was en-

tirely discharged therefrom. *Further*, that John B. Savage was by the same orphans' court appointed administrator *de bonis non* of the testator's estate, and still is administrator of the same. It is then alledged that the defendant duly administered upon all the effects which came into his hands to be administered, and the effects not administered upon were delivered to his successor, &c. 5. That he has resigned the administration, and is not now the administrator of the testator's estate; that upon his resignation, John B. Savage was appointed administrator *de bonis non*, and is now administrator of that estate; that he has fully settled all his accounts with the orphans' court of Clarke, and hath delivered all the effects belonging to the estate, to his successor, which were not previously administered on, and duly accounted with him.

Issues were joined upon the first and second pleas, and the plaintiff demurred to the others. The demurrer was sustained to the third plea, overruled to to the fourth and fifth, and to these, there were replications and issues. The cause was submitted to a jury, who returned a verdict for the plaintiff, and judgment was rendered accordingly. On the trial, the defendant excepted to the ruling of the court. It was proved, that at the time of the defendant's appointment as administrator, that a plantation, with the slaves and stock thereon, situate in the county of Clarke, passed into his possession. This property the testator directed should be kept together for a certain time, which had not yet expired.

The defendant had settled his accounts with the orphans' court, from which he derived his appointment, and fully accounted for all the money which had come to his hands, and for every act done by him up to that time. On the 27th December, 1845, he resigned his administration; his resignation was accepted, and John B. Savage appointed administrator *de bonis non*, on the 15th January, 1846—that all the property which the defendant had ever received as administrator, and which he had not sold and accounted for, was, at the time of his resignation, on the same plantation where it was when he was appointed. "After such resignation, the slaves and other personal property were, clandestinely, by persons unknown, carried away to parts unknown, and never

Gayle, adm'r, &c. v. Elliott.

came into the possession of Savage, the administrator *de bonis non.*"

Thereupon the defendant prayed the court to charge the jury, that if the property was on the plantation, where it was by the will of the testator, directed to be kept at the time of the defendant's resignation, then the defendant did, in law, deliver the property to his successor. This charge was refused by the court.

*Further,* "that if property enough, to wit, the plantation, came into the possession of Savage, the administrator, to pay the debt in this cause, then the plaintiff had no right to inquire as to other property, and cannot recover of the defendant." This charge was also refused.

*Again:* that the defendant is only liable in this action and and in this court for acts done before his resignation that the defendant had no right to control the property of the estate after his resignation; whatever may have become of the property after that time, without the knowledge or consent of the defendant, he is not responsible for it. This charge was refused, but the court instructed the jury, that although it was true, the administrator, "after his resignation had no general control of the estate, yet he could control it, in so far as it was necessary to deliver it to his successor, and without such delivery, his resignation could not be considered perfect." Not only the refusals to charge, but the charge given are duly excepted to.

LESLIE, for the plaintiff in error, insisted—1. If any goods of a testator are stolen from the possession of his executor, he shall not be charged with these as assets. [2 Williams' Ex. 1021.] The will required that the property should be kept on the plantation. The administrator had no right to remove the property. He was required to leave it on the plantation. If the law required him to leave the property on the plantation, then this was a delivery in law. The resignation of an executor or administrator will not abate a suit then pending, if there be more than one, the suit will proceed in the name of, or against those remaining—if he is the sole representative of the estate, the suit will be revived in the name of his successor. [Elliott, adm'r, v. Eslava, 3 A. R. 568.]

J. W. HENLEY, for the defendant in error, made the following points:   1. It is not sufficient for the administrator to aver in his plea, that he has resigned the administration, and settled his accounts with the orphans' court.   He must also aver, that he has delivered over to his successor all the property of the estate that remained in his hands unadministered —and that without such averment his plea is bad on demurrer.   [Driver v. Riddle, 8 Port. 343 ; Clay's Dig. 222, § 9; Thomason & Hayne's Ex. v. Blackwell, 5 S. & P. 181; Skinner v. Frierson & Crow, 8 Ala. R. 915.]   2. The delivery of possession in such a case, must be such as to transfer the control of the property from the resigning administrator to the successor ; and that it is not sufficient that the property is left on the plantation of the deceased, upon the resignation of the administrator ; and especially if it appear by the evidence, that no part of the personal property ever came to the hands of the successor.

3. It is no defence that he proves that a sufficient amount of property came to the hands of the successor to pay the debt sued for in this action.   4. Though the administrator has no general control over the property of the estate after his resignation, yet that he may control it so far as it may be necessary to preserve it until a successor is appointed and qualified, and then to deliver it over to his successor.   5. It does not appear by the testimony in the record, that any part of the property of the estate was stolen out of the possession of the administrator—that such testimony could not have been properly received under the present state of the pleadings. But even if it were properly before the court, it could not avail the plaintiff in error.   [Cross v. Smith, 7 East, 258.]

COLLIER, C. J.—The act of 1821 authorizes an executor, administrator or guardian, to "resign his or her authority;" but provides, that "in such case, he, she, or they, and his, her or their securities, shall be bound for all the assets or effects, which shall not have been duly administered or applied, or shall not be delivered to their successors respectively." [Clay's Dig. 222, § 9.]   Under this statute, and in conformity to the decisions at common law, we have held that "no administrator or executor, can by resignation of his

authority, avoid any liabilities imposed on him by law; and that he can only be discharged by showing an administration or want of assets." [Driver v. Riddle, 8 Porter's Rep. 343.] To the same effect are the other cases cited for the defendant in error on this point. The third plea is defective in not showing an administration of the assets that came to the defendant's hands, or their delivery to his successor.

The fourth and fifth pleas both alledge a settlement of the defendant's administration accounts, his resignation, and the delivery by him of all the property which he had received, as administrator, to Savage, his successor. Conceding the settlement with the orphans' court, and the resignation of the defendant to have been sufficiently shown, and we will inquire whether the delivery of the estate, which came to the defendant's hands was so proved as to discharge him from liability. The evidence upon this point is substantially this: the defendant resigned his administration on the 27th December, 1845, and his successor was appointed on the 15th January following; that all the property which the defendant had received as administrator, and had not administered was, at the time of his resignation, on the same plantation on which it was when he was appointed; after his resignation this property was clandestinely removed by persons unknown and carried to parts unknown, so that it never came to the possession of Savage.

It does not appear *in totidem verbis*, that the removal took place previous to the appointment of the administrator *de bonis non;* but from the manner in which the facts are stated, we must infer that it occurred between the time of the resignation and the appointment of the successor; especially as the bill of exceptions must be taken most strongly against the party excepting.

The statute is explicit, and declares that an administrator shall not discharge himself by resigning his trust; it is made his duty to deliver to his successor all the assets and effects which shall not have been duly administered or applied. True, the authorities and duties of an administrator cease with the resignation of his trust, and settlement of his accounts, but his conservative powers in respect to the estate, still continue, until he absolves himself from responsibility,

by delivering it to a successor. He has not only the power, under such circumstances, to preserve the estate, but the law makes it his duty; otherwise he would not be able to do, what not only the statute, but the common law enjoins on him.

The mere fact, that the assets remained where the testator by his will directed, at the time of the defendants resignation, did not relieve him from taking care of the property, that he might have it ready to be delivered to the administrator *de bonis non.* What acts on the part of the defendant would have been necessary to have placed his successor in possession of the estate, if the personalty had not been removed, need not now be considered, since it is clear that the proof falls short of establishing the delivery.

Can it be true, that the clandestine removal of property from an administrator, would discharge him from liability to account for it, where it is not shown that he took such care of it, as a man of prudence would have taken of his own estate? Should it not at least appear that he was not chargeable with neglect, or the want of a proper supervision? Certainly it would seem that greater indulgence should not be allowed. So that even if the first facts stated, constitute a larceny, to make them available as a defence, it must appear that the property was not put at peril by the defendaut's carelessness.

It is scarcely necessary to add, that the defendant cannot excuse the non-delivery of the personalty, by proof that the real estate went into his successor's hands, under the provisions of the will. The statute only entitles him to his discharge upon the delivery of "all the assets, or effects, which shall not have been duly administered or applied.

The view we have taken, is conclusive that the pleas were not sustained by the evidence, giving to it a reasonable, and even a liberal interpretation. Considering the charges prayed in reference tc the evidence, and it is perfectly clear, that there is no error in the record. The judgment is consequently affirmed.