## DUNHAM v. GRANT.

1. An administrator cannot sue upon a note, an asset of the estate, which he has taken payable to himself as administrator, after his removal from office, although no successor has been appointed.

Writ of Error to the Circuit Court of Dallas.

This was an action of assumpsit on a promissory note, by which the defendant below, on the 21st January, 1842, promised to pay twelve months thereafter, to the plaintiff, as administrator of Margaret McCord, deceased, the sum of $682 88. The defendant pleaded—1. Non-assumpsit. 2. That the note declared on was made payable to the plaintiff, as administrator of the estate of Margaret McCord, deceased, of which he was such representative; and was at and after its execution, assets thereof in the plaintiff's hands; that the same was given in consideration of personal property of the intestate, sold by the plaintiff in his character of administrator, by virtue of an order of the orphans' court of Dallas, and was received and held by him in that character, and not otherwise. It is then alledged, that afterwards, and before the commencement of this action, the plaintiff's letters of administration on the estate, and his authority as administrator, were by the court from which he derived his appointment revoked and annulled, and still are revoked and annulled; that the plaintiff is not now, nor was at the commencement of this suit, the administrator of the estate of Margaret Mc-

14

Dunham v. Grant.

Cord, or entitled as such, or in any other right or way to maintain an action against the defendant on the note declared on. This last plea was verified by the defendant's oath. The plaintiff demurred to the second plea, and his demurrer being sustained, the cause was submitted to the jury on the *general issue*, a verdict was returned for the plaintiff, and judgment rendered accordingly.

C. G. EDWARDS, for the plaintiff in error, insisted, that the second plea was good—it alledged facts incompatible with the plaintiff's title to the note, or right to maintain an action thereon. [Clay's Dig. 227, § 30; Minor's R. 206; 5 Port. Rep. 145; 6 Ala. Rep. 399.] The plea sets up a bar *prima facie* sufficient, and the plaintiff should have specially replied any matter of avoidance.

E. W. PECK, for the defendant in error. The payee of the note might have maintained an action thereon in his own name without describing himself as administrator. [1 Chit. Plead. 203.] If the administrator whose letters are revoked, recover, he and his sureties will be liable for the amount. [Clay's Dig. 222, § 9.] He must be allowed to recover it, or the debtor may avoid payment altogether. The cases cited for the plaintiff in error, merely determine that an administrator *de bonis non* may maintain an action upon a note or bond payable to his predecessor, if it is delivered over to him. [Minor's Rep. 206; 2 Stewt. Rep. 133; 6 Ala. Rep. 387–399.]

COLLIER, C. J.—In Caller's Ex'rx v. Birney's Adm'rs, Minor's Rep. 206, it was decided, that an administrator *de bonis non* could maintain an action on a writing payable to his predecessor in his representative character; that as the money when received would be assets of the intestate's estate, the right of action followed the administration. To the same effect is King and Clarke v. Griffin, use, &c. 6 Ala. R. 387. So it has been held that bonds and notes taken by executors and administrators for property of the estate they respectively represent, are "held by them not in their own right, but as assets in the right of others. And hence, upon their death,

Dunham v. Grant.

resignation or removal, such notes or bonds would pass to those entrusted with the further administration, as part of the estate unadministered;" consequently, the marriage of an obligee who was an administratrix with one of the obligors, only suspended the right of action upon the bond, which was revived in favor of an administrator *de bonis non.* [King v. Green, 2 Stewt. Rep. 133.] Green v. Foley, 2 Stewt. & P. Rep. 441, merely determines, that although the recovery of a judgment by an administrator for a debt due the intestate vests the interest in the administrator, and authorizes him to sue thereon in his own name, without noticing his representative character, yet where some of a plurality of administrators are removed from the trust after the rendition of a judgment in favor of all, an action on the judgment is properly brought in the name of the administrator who continues in office. In Cummings v. Edmondson, 5 Porter's Rep. 145, the right of an administrator *de bonis non* to sue upon a writing payable to his predecessor *eo nomine* where the money due thereon will belong to intestate's estate when collected, is recognized and supported.

In Harbin v. Levi, 6 Ala. Rep. 402, it was said, that the rights and duties of an administrator under the earlier English statutes, are very different from what they are in this State. There he was clothed with a discretionary power over the personal estate of his intestate, and when disposed of by him, either for money or on credit, the money or notes were absolutely his own. Here, however, the administrator is required by law to dispose of the assets on credit, and it is apprehended that, so long as they continue in a condition to be traced, and are not converted into money, they will pass as assets to any subsequent administrator. This, indeed, is the rule in England when the property has not been changed." In the opinion, the case of Turner v. Davies, 2 Saund. Rep. 137, is cited; there an administrator had recovered a judgment in *trover* for the conversion of the property of his intestate, but his letters were repealed before it was satisfied. An *audita querela* was awarded at the instance of the defendant, and it was held that the removed administrator could not sue an execution on the judgment, as it was clear that the administrator *de bonis non* was entitled to the money, and if

Dunham v. Grant.

collected by his predecessor, he would recover it of him. And therefore to avoid circuity of action, the defendant was discharged from liability to the plaintiff in the judgment, and held chargeable to the new administrator for the value of the goods converted.

In Gayle, Adm'r, v. Elliott, 10 Ala. Rep. 264, it was decided, that it was not a good plea by an administrator in an action against him that he had resigned the trust, the plea should also alledge, either that he had administered the assets that came to his hands, or that he had delivered them to his successor: *Further*, that the 15th section of the act of 1821, "is explicit, and declares that an administrator shall not discharge himself by resigning his trust; it is made his duty to deliver to his successor all the assets and effects which shall not have been duly administered or applied. True, the authority and duties of an administrator cease with the resignation of his trust, and settlement of his accounts, but his conservative powers in respect to the estate still continue, until he absolves himself from responsibility by delivering it to his successor. He has not only the power, under such circumstances, to preserve the estate, but the law makes it his duty; otherwise, he would not be able to do, what not only the statute, but the *common law, enjoins on him.*"

By the act of 1806, it is enacted, that if it appear, upon examination, that any administrator hath embezzled, wasted or misapplied, all or any part of the decedent's estate, or shall refuse or neglect to give bond, with security, when required by the orphan's court, that court may forthwith revoke or repeal the letters of administration, and thereupon commit the administration to such other person having a right thereto as will give the proper bond; who may have actions of trover, detinue, account and on the case, for such goods or chattels as came to the possession of the former administrator, and were withheld, wasted, embezzled, detained or misapplied, by him, and no satisfaction made for the same. [Clay's Dig. 221, § 4.]

The 19th section of the act of 1821, " to repeal in part and amend an act, entitled 'an act to regulate the proceedings in the courts of law and equity in this State,'" enacts, that " where any personal representative or guardian shall be dis-

placed, all moneys due to him or her in such right, by execution or otherwise, shall be paid to his or her successor." [Clay's Dig. 227, § 30.] The 15th section of the same statute provides that an executor, administrator or guardian, may by writing subscribed and delivered into the clerk's office, resign his or her authority: but in such case, he and his sureties shall be bound for all the assets or effects, which shall not have been duly administered or applied, or shall not be delivered to his successors. [Id. 222, § 9.]

The plea in the case at bar alledges, that the note declared on was given by the maker, and received by the plaintiff in consideration of personal property sold by the latter in his character of administrator, under an order of the orphans' court: Further, that afterwards, and before the commencement of this action, the plaintiff's letters of administration and his authority as administrator was revoked and annulled, and still are revoked and annulled; that the plaintiff is not administrator, nor entitled in any other right to maintain the action. We cannot doubt the sufficiency of this plea as a bar to the action, and if the plaintiff had sued in his individual, without noticing his representative character, it would have been equally available. The fact that a note or bond is made payable to an administrator *eo nomine*, it has been held in several of the cases cited, does not invest him with a title against his successor in the administration—if it was assets of the estate he represented, upon his resigning or being displaced, it would pass as such, to the administrator *de bonis non*.

We have seen that the act of 1806 authorises the orphans' court, if an administrator has embezzled, wasted, or misapplied all or any part of the intestate's estate, or refuses or neglects to give bond as required by law, to revoke or repeal his letters of administration. The administrator derives his authority from the orphans' court, and if that is withdrawn or annulled, what powers does he retain as such? Can he collect money due the estate? If he can, it must be because it is his duty to preserve the estate, and deliver it to his successor. I will not say that the right to receive money, or even maintain an action for it before the successor is appointed, is not *under any circumstances* a conservative power.

Dunham v. Grant.

But where letters of administration have been *revoked or repealed* under the statute, the administrator retains no authority as such,—his duty is, to deliver to the successor the assets unadministered. The object of annulling the grant is to take from the administrator the right to collect money due the estate, or to interfere further in the administration. The orphans' court proceeds in such case upon the ground, that the administrator has been faithless to the trust, or has not given the security which the law requires, in order to indemnify all persons interested in the estate. If the revocation of his authority proceeded from the faithlessness of the administrator, or from its abuse, to permit him afterwards to maintain an action for money due the estate,, would only enable him to embezzle, waste or misapply the estate still further ; or if it was the result of neglect or refusal to execute a bond, the conversion of the assets into money would increase the risk of loss from the want of the proper security. In either case, the concession of such a power to a displaced administrator would most obviously thwart the policy of the statute, if not its very terms. Besides, the act of 1821 expressly declares, that in such case all monies due to the administrator, by execution or otherwise, shall be paid to his successor. This is equivalent to a positive declaration that no one else is authorized to receive them.

While this view carries out the letter of the statutes, it also preserves their spirit, and cannot possibly work harm to any one. There is no danger of loss to the estate from the administration remaining in abeyance ; for the statute is explicit in directing the orphans' court *mero motu*, upon the letters being revoked or repealed, " to grant letters of administration to such other person or persons, having a right thereto, as will give bond," &c. Should it not be presumed, if material, that this duty has been performed ? In the absence of any thing of which the reverse may be predicated, must it not be intended that courts and public officers have done what the law requires ? If then, the appointment of an administrator *de bonis non* be a material inquiry, should not that fact have been negatived by a replication. The view we have taken does not make it necessary to answer these questions.

Whether, if the plaintiff had merely resigned his trust, it would have been necessary to show the appointment of a successor, in order to make out his defence, the facts of this case do not make it necessary to inquire. It remains but to add, that the judgment of the circuit court is reversed, and the cause remanded.

ORMOND, J.—Dissenting.

In this case I dissent from the opinion just pronounced. Notwithstanding the removal of the administrator from office, the law casts on him the necessity of preserving the effects of the estate remaining in his hands, and he can only discharge himself, by handing them over to his successor. If the assets are chattels, it would be his duty to institute proceedings to recover them, if taken from him by a wrongdoer, and his failure to do so, would subject him to a responsibility, as was held by this court, in Gayle, Adm'r, v. Elliott, 10 Ala. 264.]

I am unable to perceive any distinction in principle between that case and the present. If a removed, or resigned administrator, cannot commence, or maintain a suit, on notes taken by himself upon the sale of the property of the estate, where no successor has been appointed, the consequence will be, that much loss may be sustained by the estate, as the debtor may be about to remove, or the bar of the statute of limitations may be nearly complete, and could only be prevented by the commencement of a suit. This power is entirely conservative in its character, and cannot possibly lead to abuse. Whilst, on the other hand, to permit such an objection as this, to be raised by the debtor, that the removed administrator, in whom the legal title remains until his successor is appointed, cannot sue, without showing that any other person has the right to sue, will certainly be productive of the most mischievous results.