## HEARRIN, Adm'r, vs. SAVAGE, Adm'r.

1. Where an administrator *de bonis non* pays to a former administrator a sum of money, which he advanced, during his administration, to satisfy a demand with which the estate was justly chargeable, he is entitled to an allowance for the sum so paid, in the settlement of his accounts.

2. The reasonable fees of attorneys, who were retained *bona fide* by a former personal representative to protect the interests of the estate, are, when paid by the administrator *de bonis non*, proper allowances in his favor, and, being part of the expenses incident to the administration, the sum so paid cannot be abated, although the estate is declared insolvent.

3. Where, in consequence of the neglect of the administrator to take possession of the slaves of the estate, they are removed to another State, the estate is not liable for the expenses and compensation of an agent and attorney, employed by a creditor, who pursues and recovers them, without any contract with the administrator.

4. If, after a decree of insolvency, the administrator pays in full claims which are not privileged, or which create no lien on the estate, he will occupy the place of the creditors, and is only entitled to a *pro rata* allowance. But in such case it would be proper upon the settlement of his accounts to permit him to retain the *pro rata* shares of the creditors whose claims he represents, if they can be ascertained before a final dividend is declared.

Error to the Orphans' Court of Clarke. Tried before the Hon. Terrell Powers, Judge.

In 1843, P. T. Harris qualified as executor of Thomas L. Starke, deceased, was succeeded in the administration by Billups Gayle, who resigned in December 1845, and he by the defendant in error, who was appointed administrator *de bonis non* in January 1846, and upon whose representation the estate was declared insolvent on the 14th December 1846, The plaintiff in error was then selected and qualified as administrator. Upon the final settlement of his administration by the defendant in error, he produced in support of an item of $412.50 on the credit side of his account, as paid to B. Gayle, the receipt of F. S. Blount, Esq., from which it appeared that as the attorney of the plaintiff in an execution in favor of one Davis against said Gayle as administrator, said Blount had received from Gayle the amount above named, to be credited on the execution, and which amount so paid by Gayle had been repaid to him by the defendant in error. The plaintiff in error objected to the allowance of this credit, on the ground that it was an illegal and improper credit, and should have been brought forward in Gayle's own settlement, but the court overruled the objection and allowed the credit. In support of a credit of $210 for money paid to Torrey & Williams, it was shown that $20 of it was for professional services rendered by them as attorneys at law to P. T. Harris, executor, $70 for professional services rendered to B. Gayle, administrator, and $40 for a trip by Williams, one of said attorneys, to Mobile, and services there rendered at the request of defendant in error. It was further shown in reference to this item, that the object of the visit to Mobile was to attend to the proper application of a sum of money in the hands of the sheriff, that was claimed adversely to the interest of the estate, under an execution in favor of the Bank of Mobile ; and that John Gayle, Esq. an attorney residing in Mobile, had also been employed, and had defeated the claim of the bank, before the arrival of Williams. The plaintiff in error objected to the allowance of the several amounts of $20 and $70 above named, on the ground that they were illegal and improper credits, and should have been brought forward in the settlements respectively of Harris and Gayle, and to the

credit of $40 as not a legitimate charge under the facts disclosed against the estate; which objections were overruled, and the whole credit allowed. In support of a credit of $250 paid Campbell & Chandler, it was shown that suit had been instituted against Thomas L. Starke in his life-time in the U. States Court at Mobile on the Receiver's bond of one Owen, upon which said Starke was a surety; that it was successively revived against Harris and Gayle as Starke's representatives; that Campbell & Chandler were employed to defend it, and finally succeeded in defeating it during Gayle's administration; and that the $250 was paid them by defendant in error as their fee in the case, after the estate was declared insolvent. To the allowance of this item also the plaintiff in error objected, on the ground that the administrator Gayle should have settled it, and that the defendant in error had no right to pay it after the decree of insolvency. The court overruled these objections and allowed the credit. In reference to a credit claimed for a considerable sum of money paid to John Gayle, Esq., it was shown that a part of it was for professional services rendered to B. Gayle as administrator, and which were beneficial to the estate, and . a part for expenses and compensation in going to Louisiana in pursuit of, and in capturing and bringing back to Alabama about forty negroes belonging to the estate, which had been run off by one of the heirs. It was proven that Gov. Gayle was employed in this business by the Branch Bank at Mobile, a large creditor of the estate, and that no contract was made by him with the administrator to perform this service. The court allowed the entire credit in opposition to the objection of the plaintiff in error. A credit was claimed of $200 paid to B. Gayle for assisting in the capture of these slaves, and similarly disposed of. Other credits were claimed for payments made to the several banks in Mobile, the objections to which are sufficiently noticed in the opinion of the court. To the rulings of the court respectively exceptions were taken, and they are now assigned as error.

A. B. COOPER and VARY, for plaintiff in error:

1. Where an administrator has paid a debt against the estate of his intestate, he alone must seek the allowance of such payment in his own settlement with the Orphans' Court. He cannot settle his administration, or any part of it, with his suc-

cessor in the administration.—Clay's Dig. 229, § 41.  2. An administrator has no power to contract debts which will bind the estate to a creditor.—2 Port. 33.  3. When an administrator has paid out monies on account of the estate, he must show to the Orphans' Court that such expenditure was necessary, reasonable and proper, otherwise he is not entitled to have them allowed in· his account and settlement with the court.  4. A judgment is an admission of assets.  Hence an administrator has clearly the right to retain assets sufficient, to pay judgments obtained against him, and altho' B. Gayle had resigned, yet it presumed that *he* had retained assets sufficient to discharge the judgments.  Savage was no party to those judgments, or either of them, and was not liable to pay them.— Gayle, adm'r, v. Elliott, 10 Ala. Rep. 264.  5. After the estate was declared insolvent, and an administrator *de bonis non* elected by the creditors, Savage was no longer the administrator of the estate, and had no right to pay a creditor his claim or any part of it.  If he had been continued in the administration after the decree of insolvency, still he would not have had the right to pay a creditor his claim and to include such payments in his account and settlement.—Clay's Dig. 194, § 10.

CAMPBELL and BLOUNT, for defendant in error:

1. The statutes of the State authorise a settlement between the administrator and the administrator *de bonis non*.  The want of privity which formerly existed has been removed by the operation of those statutes.  The administrator *de bonis non* may collect by suit the estate of the decedent in the hands of the administrator.  He can do so without suit.—Clay's Dig. 227, § 30; Act of Feb. 4, 1846.  2. If Savage was discharged from his administration, and afterwards intermeddled with it, he became an executor *de son tort*.  He is entitled as such an executor to a credit for all· the debts legally paid by him.—9 Mass. 74; 7 Cow. 64; Lomax on Ex'rs, 78, 79; 2 Hawks, 544; 1 Cas. in Ch. 33.  3. The question of a devastavit in the payment of some claim, preferably to others, does not arise between the administrator *de bonis non* and the administrator. The creditors are alone parties to such an issue.

COLLIER, C. J.—When an executor or administrator shall be displaced, all money due to him in his representative

character, by execution or otherwise, shall be paid to his successor. Clay's Dig. 227, § 30. The act of February 1846, authorises the Orphans' Court to render a decree upon final settlement with an executor or administrator who has resigned, died, or been removed, in favor of the administrator *de bonis non* or of the heirs or distributees, for any balance that may be found due. Clay's Dig. 191, § 1; see also Skinner v. Frierson and Crow, 8 Ala. 915; Dunham v. Grant, 12 Ala. 105.— The cases cited expressly determine that an administrator ceases upon the resignation of his trust to represent the estate, and that he cannot maintain an action to recover its assets, not even upon a note payable to himself in his representative character. In Gayle, adm'r, v. Elliott, 10 Ala. Rep. 264, it was decided that the duties and authority of an administrator, as such, determine with the renunciation of his trust and the settlement of his accounts, but he can only absolve himself from liability by delivering the estate to his successor.

It may perhaps be proper for an executor or administrator, upon resigning, to protect himself by satisfying judgments or other liabilities against him as such; but if he does not, and afterwards discharges them from his own estate, he will not be compelled to bear the loss. His successor in the administration may reimburse him, and if the assets are ample, may be compelled to do so. If this were a doubtful question at common law, the modified state of the law in this State makes it clear that the administrator may retain for his advances, or if he allows the estate to pass into the hands of an administrator *de bonis non*, he becomes a creditor, at least. If the personal representative, who contracted or incurred liabilities, relinquishes the trust and turns over the assets to a successor, the latter will be authorised to discharge them, if they were primarily a just charge upon the estate. This is but reasonable, for the estate should bear its own burdens, no matter to whose hands its administration may be entrusted.

In O'Neill v. Donnell, 9 Ala. Rep. 734, it was held that there was no general rule to determine when costs incurred by an administrator in respect to the assets of the estate shall be allowed; every such case must depend upon its own peculiar circumstances. "It is evident, however, there is one fact which must exist in every case, to warrant the allowance of

costs, outside of the administration. This is the *bona fides* of the act by which the costs are incurred. This seems to have been the conclusion in Morris v. Murgatroyd, 1 Johns. Chan. 473, where Chancellor Kent felt the difficulty, but allowed the charge. So in the case before us, it is impossible to say the party was justified in the trespass, or that if damages had been recovered, these could be a proper charge; yet we think the counsel fees were properly allowed, because whether an actor or a defendant to the suit, the title was necessary to be ascertained, and could not well be done without the employment of counsel." It was also decided that an administrator may be allowed for *extraordinary services,* but no difficulty in making inventories, sales, or keeping accounts, is to be so considered. So in Harris v. Martin, 9 Ala. Rep. 895, the administrator was an attorney at law, and had performed valuable professional services for the estate in prosecuting and defending suits, &c., and the question was whether he should be allowed compensation for them in the settlement of his account: *Held,* that the Orphans' Court was authorised to allow compensation to the administrator, if the litigation was *bona fide* for the benefit or demanded by the necessity of the estate; but the amount of the compensation is to be ascertained, not by the usual estimate placed on such services, but the criterion of value is what a prudent administrator would be inclined to pay an attorney, considering the condition of the estate—taking care under no circumstances to allow specific fees in each case.

After the report that the estate of a deceased person is insolvent is comfirmed, the executor or administrator shall on a day to be appointed by the Orphans' Court make a settlement of his accounts, and notice shall be given to the creditors to attend. On the day appointed for the attendance of the creditors, they shall hold a meeting under the direction of the court, and may elect and nominate to the court some suitable person as administrator *de bonis non* of such estate; and upon such person taking the oath and entering into bond with sufficient surety, letters of administratration shall be granted him accordingly. Clay's Dig. 192, 193, §§ 2 to 6. *Further,* " whenever any administrator *de bonis non* shall be appointed according to the provisions of this act, any former grant of letters testamentary or of administration of the said estate shall be thereby

revoked; and all the goods, chattels, moneys, choses in action, and other personal effects belonging to the said estate, shall be thereby vested in such administrator *de bonis non;* and he shall be entitled to demand and receive from the former executor or administrator, all moneys found due and owing from him to the estate, and all such goods, chattels, choses in action, and other personal effects, and deeds and other evidences of title to real estate, and may recover the same by any proper proceeding or actions, either in the Orphans' Court or any court of common law or equity, against such former executor or administrator and his securities." Clay's Dig. 194, § 9. The effect of the decree of insolvency is to transfer to the Orphans' Court the entire jurisdiction of all claims against the estate.— With a few exceptions, all debts are placed on the same footing, though the estate be solvent, and when it is insolvent, the fund for distribution is to be equally divided amongst all the creditors who are not thus privileged. Edwards v. Gibbs, 11 Ala. Rep. 292.

1. This view of the law appropriate to the questions arising upon the record, may serve as aids in their solution. First then, in respect to the sum of four hundred and twelve dollars and fifty cents, which was paid by the defendant to B. Gayle his predecessor in the administration, if it went to reimburse the latter an advance he had made for the estate, while he was administrator, in the payment of a demand with which it was chargeable, it follows from what we have said, that it was properly allowed in the settlement of the defendant's account. The form of the exception indicates that it was not objected to for a defect of proof, but that the character of the claim was such as we have supposed.

2. The account of Torrey & Williams for professional services rendered P. T. Harris and B. Gayle, the defendant's predecessors, is a proper charge against the estate, if these gentlemen were retained *bona fide* to vindicate or protect its interests. We are authorised from the form of the exception to infer that they were thus employed, and that the charges are reasonable. As for the forty dollars which was charged and allowed in this account for Mr. Williams' visit to Mobile, at the request of the defendant, to supervise the appropriation by the sheriff of that county of money in his hands belonging to

the estate, it must be disallowed. It seems that the defendant was represented in Mobile by counsel, whose duty it was to attend to the same business, and that the attention of the latter had caused the business to be adjusted beneficially to the estate before Mr. Williams reached Mobile. The employment of additional counsel so far as we are informed by the record was wholly unnecessary, and the estate cannot be subjected to a charge for his compensation. What we have said in respect to all but the last item of Torrey & Williams' account, will apply to the sum paid to Campbell & Chandler, and show that it was properly allowed. It was part of the expenses incident to settling the estate, and should not be abated in consequence of the insolvency of the estate. If a different rule was applied, and such a claim was placed upon the footing of that of an ordinary creditor, it would be difficult for the executor or administrator to settle an estate which turned out to be insolvent without subjecting himself to a personal liability. Counsel, unless a stipulation was made to the contrary, would be authorised to look to his personal responsibility for payment, and it would be the extreme of injustice if he could not retain from the estate for his own indemnity. If upon withdrawing from the administration, he neglects to retain, but passes over the assets to his successor, he may look to the latter for payment, and though the estate be insolvent, his claim will not abate *pari passu* with ordinary creditors. We have seen that upon the election and qualification of the plaintiff, the defendant was discharged from the administration, and any subsequent disposition of the assets would make him an executor *de son tort.* This then must have been the character in which the defendant paid the demand, or he must be considered as the purchaser of the claim; in either event he is entitled to be allowed it in the settlement of his account. The citations for the defendant in error upon this point are pertinent, and satisfactorily establish the conclusion we have expressed.

3. The items in the account of J. Gayle for professional services, if reasonable and proper, are a just charge upon the estate. But as he pursued and recovered the slaves that had been removed from this State, under a contract with the branch Bank at Mobile, without any previous agreement with the defendant, the estate is not liable for his expenses, person-

al inconvenience, loss of time, &c. It was the duty of the defendant to take possession of the slaves and subject them to the administration whenever they came within his reach, and he would only have been authorised to pay for having placed them there, when he had made a previous contract with some one for that purpose.

There was no pretence for allowing the defendant the two hundred dollars he paid B. Gayle for having assisted in bringing back the slaves to this State, not only for the reason that he did not go in pursuit of them under a previous contract, but for the additional reason that he charged nothing for the services he performed.

4. In respect to the payment of the several sums to the Banks, to the allowance of which the plaintiff objected, it may be remarked generally, that these paymenrs were made after the decree of insolvency; that it does not appear they were privileged claims, or that the creditors had such lien as entitled them to be paid *in toto*. This being the case, the defendant was not authorised to pay them, and having done so in his own wrong, he can only stand in the place of the creditors and receive a *pro rata* allowance from the assets subject to distribution amongst the creditors. True, instead of requiring him to deliver over to the plaintiff all the assets, the Orphans' Court may permit him to retain so much as he was entitled to upon the debts paid after his authority ceased, if this sum can be ascertained before a final dividend is declared.

This view is decisive of all the questions presented, and may serve as a guide to the ulterior proceedings in the court below. The judgment is reversed, and the cause remanded.