# Erwin & Jones v. Hill's Administrator.

*Action on Promissory Note given for Price of Land sold by Administrator under Probate Decree.*

1. *Grant of administration during late war; action by administrator.* — An administrator, appointed by a probate court of this State during the late war, cannot maintain an action in the courts of the present state government, by virtue of those letters alone; but if he sold property belonging to the estate, under orders of the probate court, taking a note payable to himself as administrator, and has not been discharged from his fiduciary responsibility, nor superseded by a subsequent appointment, he may maintain an action on it in his own name; and his subsequent appointment as administrator, pending the suit, will enable him to enforce the collection of the judgment, and at the same time protect the defendant in paying it.

2. *Estoppel en pais against administrator.* — An administrator who, in selling property under an order of the probate court, makes an agreement with the purchaser contrary to the terms of the decree, cannot repudiate his agreement on that account, when suing on the note given for the purchase-money.

3. *Contracts payable in Confederate money; measure of recovery.* — In estimating the amount which a party is legally, justly, and equitably entitled to recover (Ordinance No. 26 of convention of 1865), when suing on a note given for the price of property sold during the late war, and which, by contemporaneous agreement between the parties, might be discharged by a payment in Confederate treasury-notes, the criterion is the value of the property in lawful money at the time of the sale; and although it is permissible, in determining that value, to consider the relative values of Confederate money and lawful currency, yet this must not be made the standard.

APPEAL from the Circuit Court of Hale.

Tried before the Hon. M. J. SAFFOLD.

This action was brought by Mrs. Susan B. Hill, suing as the administratrix of her deceased husband, Charles W, Hill, against George Erwin and Allen C. Jones ; was founded on the defendants' promissory note for $40,386.98, dated the 10th day of February, 1863, and payable to the plaintiff, as such administratrix, on the 1st March, 1864 ; and was commenced on the 9th day of March, 1866. The judgment rendered on the first trial was reversed by this court, on appeal by the plaintiff, and the cause was remanded, as shown by the report of the case in 44 Ala. 661–8. The opinion then delivered in the case has been expressly overruled, at the present term of the court, in the case of *Riddle* v. *Hill's Adm'r*, *ante*, pp. 225–234. On the second trial, as the record now shows, the case was submitted to the court on an agreed statement of facts, which is substantially set out in the opinion of the court ; and the court charged the jury that, " on these facts, the plaintiff was entitled to recover the amount of the said note, with interest thereon, less the amount of credits indorsed thereon." This charge, to which the defendants excepted, is now assigned as error. The opinion was delivered at the June term, 1872.

WM. M. BROOKS, for appellants.
VOL. LI.

[Erwin v. Hill's Administrator.]

A. B. PITTMAN, with R. H. SMITH, contra.

B. F. SAFFOLD, J. — When this case was in this court before (Hill v. Erwin et al. 44 Ala. 661), it was held, that the sale of a decedent's land, under an order of the probate court, at the instance of the administrator, was a judicial sale; and that the term " dollars," as expressive of the consideration to be paid, meant such as would be a legal tender in the payment of debts. From these premises the court deduced the conclusion, that the purchase-money of lands of a decedent, so sold in 1863, could not be shown to have been payable in Confederate currency, by agreement between the administrator and the purchaser at the time of sale, in a suit by the administrator as such against the purchaser.

The case is now returned to us under a different state of pleading, with additional facts, presenting new issues. It is agreed between the parties, that the plaintiff, Mrs. Hill, was duly appointed administratrix, in 1862, but by the court of the insurrectionary government existing in the State at that time; and that she has not had, either at the sale, or at the commencement of this suit, or at any other time, any other authority to represent the estate than was derived from that appointment. It is further agreed between them, that " the general issue, and appropriate special pleas, denying the validity of the appointment of the plaintiff as administratrix, denying that she ever was administratrix, denying the validity of the sale of the land, and of the orders of the probate court, and presenting the questions, whether said debt has been paid; and whether the defendants have the right to scale the debt on account of the agreement to take Confederate money in payment thereof; and whether the plaintiff is entitled to recover any, and what amount from the defendants; and any other appropriate pleas, which can be well pleaded, together with appropriate demurrers, replications, and issues, shall be considered as in. The court is to pronounce upon the case on the above facts, in the form of a charge to the jury, and a verdict is to be entered in accordance with such decision."

The facts material to be stated are briefly these: The defendant Erwin bought the land of the intestate, in 1863, at a sale by the plaintiff as administratrix, under an order of the probate court, under an agreement with her that the purchase-money might be paid in Confederate treasury-notes. The land was worth at the time in gold, or its equivalent, about $13,000. He agreed by promissory note to pay over $40,000, and did pay about $32,000, in the promissory notes of other persons, which were received by the administratrix and credited on his note " as so many dollars, which at that time greatly

exceeded in amount the real market value of said lands in good money." At the date of the sale, Confederate currency was exchangeable for gold, at the rate of three dollars for one of the latter. The plaintiff has sued on the note in her representative capacity, admitting the credit in proportion to the nominal amount of each.

The agreement of the parties, in reference to the pleadings, seems to admit of any plea, whether in prosecution or defence, admissible in law under the facts stated. Perhaps, the parties ought to be required to make up their issues more definitely. As this case arises under peculiar circumstances, and is not likely to become a troublesome precedent in respect to pleading, we will consider it as presented.

The plaintiff's administration of the intestate's estate, and the orders of the probate court respecting it, during the recent war, are not void. *Griffin* v. *Ryland*, 45 Ala. 688. But an administrator cannot maintain a suit, in the present courts, by virtue alone of an appointment made under the insurgent government then existing in the State, if the objection is made. *Bibb & Falkner* v. *Avery*, 45 Ala. 691. It would be an answer to the objection, however, if the plaintiff had a personal right to recover on a contract made with him in his representative capacity. *Harbin* v. *Levi*, 6 Ala. 399. Where an administrator has, in virtue of his administration, obtained the legal title to property of the deceased, he may sue for its recovery in his own name, although he is the legal owner in the character of trustee, unless he has by some means become divested of that character. A foreign administrator, who has reduced the personal property of the deceased there situated into possession, has this right, if the property be afterwards found in another country. Story's Conflict of Laws, § 516. In *Dunham* v. *Grant* (12 Ala. 105) is an explicit decision, that an administrator cannot sue upon a note, an asset of the estate, which he has taken payable to himself as administrator, *after his removal from office*, although no successor has been appointed. But C. J. COLLIER, laying stress upon the revocation of the letters, conceded that, under some circumstances, the right to maintain an action would be a conservative power. Judge ORMOND, dissenting, held that the right to sue remained notwithstanding the removal, until a successor was appointed. The circumstances of conservative power certainly exist in this case, where there is a fiduciary liability, without a removal, or the appointment of a successor.

Section 2293 of the Revised Code, prescribing how a foreign administrator may maintain an action in this State, is confined to cases of appointment in another of the United States, when no letters have been granted in this State; and the required

qualification may be effected at any time before judgment.  It is not strictly applicable to an appointment made under the insurgent government of Alabama, which would rather be subject to the international law.  Where an administrator, under his appointment by the Confederate government of the State, had acquired a personal right to sue in our present courts, he may preserve his right from being divested pending the suit, by taking out letters of administration, thus precluding a grant to any other person.  For, while one who sues as administrator, without being such, would be defeated by the objection, a grant of letters to him, obtained before plea, and in chancery even before the hearing, would cure the defect.  *Doolittle* v. *Lewis*, 7 Johns. Ch. R. 45; *Goodrich* v. *Pendleton*, 4 Ib. 549.

It results from these propositions, that though Mrs. Hill cannot maintain this suit by virtue alone of her letters of administration derived from the insurgent authority, she may do so by reason of her legal title to, and beneficial interest in the note, acquired by her administration, and not divested out of her by any subsequent action of a competent tribunal.  Her letters of administration, obtained since this appeal was taken, cannot, under the pleadings, give her a better right to sue than she had at the commencement of the suit; but it can, and does, prevent such right as she had from being divested out of her.  She was entitled to commence the suit as a trustee administrator; and she may now recover judgment, and enforce its collection, without fear of divestiture, by virtue of her recent appointment.  The defendants will not be liable to answer over to another, and no second administrator will be put to another action to recover the money out of her hands.

2. This position of the parties materially affects their rights in the suit.  The terms of sale dictated by the probate court can only be rigidly enforced, against the agreement of the administratrix, by an administrator duly appointed and qualified by authority of the present legal probate court.  Mrs. Hill cannot avoid her contract with the defendant Erwin.

3. The payment of $32,000 does not appear to have been intended by either party as an extinguishment or satisfaction of the note.  It was evidently regarded as a *pro rata* payment, dollar for dollar, the notes of third persons being considered as about equal in value to the Confederate currency,  The unpaid balance of about $8,000, with interest, is the debt.  It is subject to be reduced to an amount which will bear the same proportion to the value of the land at the date of the sale, as itself bears to the nominal amount agreed to be paid.

In ascertaining what amount the plaintiff is legally, justly, and equitably entitled to receive according to the contract,

[Doe v. Pickett.]

agreeably to Ordinance 26 of the convention of 1865, we have adopted as the criterion the value of the property in lawful money at the date of the sale. While it would be permissible, in determining this value, to consider the relative value of the Confederate currency agreed to be paid, it must not be made the standard. We well know, that the effect of the war on the value of various kinds of property was very different. The Confederate currency became very much depreciated in respect to gold, or even United States treasury-notes, but not so much so in respect to real estate, or to cotton, or any other property, the supply of which was not derived from without the Confederate lines. It must be remembered that, although the vendor might have been willing to take the equivalent value of the Confederate money in gold at the time of the sale, he never agreed to do so after the war, when the particular circumstances had entirely changed. In many instances, it would be a great hardship to require him to do so. The price of land during the war, in Confederate currency, was never more than five or six times greater than its value in gold, either before or since; while the proportion between that currency and gold varied from nearly equality to twenty, and thirty, and even fifty for one.

The judgment is reversed, and the cause remanded.