# McNEILL'S ADM'R *vs.* McNEILL'S CREDITORS.

[BILL IN EQUITY BY ADMINISTRATOR FOR SETTLEMENT OF INSOLVENT ESTATE.]

1. *Jurisdiction of equity over settlement of decedents' estates.*—In this State, the chancery court retains its original jurisdiction over the administration of decedents' estates, and may be appealed to by a proper party, before the concurrent jurisdiction of the probate court has attached, without the assignment of any special reason; but, to authorize an executor or administrator to seek its aid and instruction, he must show some special circumstances, requiring or justifying its interposition.

2. *Payment of debts by administrator of insolvent estate.*—In paying debts, not of a preferred class, before the expiration of eighteen months from the grant of administration, an administrator acts at his peril: if the estate afterwards proves to be insolvent, he cannot charge it with the amount so paid by him, though he may be substituted for the creditors so paid, and receive the distributive share of the assets to which they would have been entitled; and this relief he may obtain in the probate court, without resorting to chancery.

3. *Payment of debt by administrator, as surety of intestate; subrogation of surety to vendor's lien.*—If the administrator of an insolvent estate pays in full, with his own individual funds, a note given for the purchase-money of land on which he was bound as his intestate's surety, he thereby becomes a creditor of the estate, and may obtain his *pro-rata* share of the assets on settlement of the estate before the probate court; but he cannot claim to be subrogated, in equity, to the vendor's lien on the land.

4. *Purchase by mortgagee at his own sale.*—A purchaser of land, having executed to his vendor a mortgage to secure the payment of the purchase-money, and having afterwards resold the land to a third person, who agreed that he would discharge the unpaid balance due to the vendor, and that the land should remain bound by the mortgage, is not within the rule which forbids a mortgagee to purchase at his own sale, and may become the purchaser at the sale under the mortgage.

5. *Contest between administrator and bailee.*—If the administrator of an insolvent estate ships cotton belonging to the estate to a commission-merchant, who retains the proceeds of sale, under an alleged contract with the intestate in his life-time, in payment of balance due on account for advances, &c., the probate court is fully competent to grant to the administrator all the relief to which he may be entitled.

6. *Satisfaction of mortgage by administrator.*—The administrator of an insolvent estate has authority to discharge an incumbrance on property belonging to it, whenever the interests of the estate would be thereby promoted; but, after selling, under an order of the probate court, lands which were incumbered by a mortgage executed by the intestate in his life-time, he cannot pay the mortgage debt in full out of the proceeds of sale, and charge the estate with the payment.

7. *Parties to injunction suit.*—It is improper to make the probate judge a defendant to a bill in chancery which seeks to enjoin the settlement of an estate pending in his court.

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed, on the 29th January, 1858, by Andrew J. Pool, as the administrator of Daniel S. McNeill, deceased, against the creditors and heirs-at-law of said McNeill; and the probate judge of Dallas was also joined as a defendant. The object of the bill was, to remove the settlement of said McNeill's estate into the chancery court, and to obtain equitable relief to the administrator on the several special grounds hereinafter more particularly explained. It appears from the allegations of the bill, that the said McNeill died, intestate, in Dallas county, which was the place of his residence, on the 28th October, 1853, leaving as his-heirs-at-law his widow and several minor children; that letters of administration on his estate were granted by the probate court of said county, shortly after his death, to one James D. Craig, who, after returning an inventory and appraisement of the estate, resigned his office on the 9th December, 1854, and letters of administration *de bonis non* were on the same day granted to the complainant; that the complainant, as such administrator, reported said estate insolvent on the 18th October, 1854; that it was duly declared insolvent by said probate court on the 11th December, 1854, and, on the failure of the creditors to nominate some other suitable person, the complainant was continued in office by the court as administrator *de bonis non.* The other material allegations of the bill, on which was predicated a claim to equitable relief, may be thus stated:

McNeill's Adm'r v. McNeill's Creditors.

1. Before the report of insolvency was made, (which was made within twelve months after the grant of administration on the estate,) the complainant, being ignorant of the great indebtedness of the intestate, and believing in good faith that the estate was entirely solvent, paid with his own individual funds a large number of claims against the estate; and he claimed in his bill that, on account of this ignorance and mistake as to the facts, he should " be permitted to retain in his hands the full amount so paid out by him, with interest thereon 'from the time of said payments respectively, and be subrogated to the rights of the said creditors."

2. In January, 1853, the intestate purchased from one Hitchcock a house and lot in Mobile, at the price of $5,700; paid a part of the purchase-money in cash, and executed his two notes for a part of the residue, with the complainant as his surety, payable respectively two and three years after date. At the time this contract was made, Hitchcock executed a conveyance of the land to the intestate, who, " at the same time, executed and delivered to said Hitchcock a mortgage on said property, to secure the payment of the balance of the purchase-money;" a copy of which mortgage, marked " Exhibit C", was annexed to the bill, and prayed to be taken as a part thereof. On the 31st August, 1854, the complainant, as administrator, filed his petition in the probate court, praying an order for the sale of this house and lot, on the ground that such sale was necessary for the payment of debts, and that it could not be fairly and beneficially divided among the heirs. The court granted the order of sale, " and the property was accordingly offered for sale, under said order, subject to said mortgage lien", on the 8th January, 1855, and was knocked off to said Hitchcock, as the highest bidder, at the price of $2,125. Hitchcock having failed to comply with the terms of the sale, the complainant instituted an action at law against him, to recover the amount of his bid; but the suit was successfully defended, and judgment for the costs rendered against the complainant, on the ground that the order of sale and the proceedings had under it were void. After-

wards, (at what precise time is nowhere stated,) "the law-day of said mortgage having passed, said Hitchcock advertised said house and lot for sale under said mortgage; offered the same for sale, at public outcry, for cash, and then and there became himself the purchaser, at the price of $2,050",—a sum alleged to be much less than its real value. Hitchcock afterwards brought suit against the complainant, on the notes given for the purchase-money of the land as above stated, and recovered a judgment against him for the balance due thereon, after deducting the amount realized by the mortgage sale; and this judgment the complainant was compelled to pay out of his individual funds. In reference to these transactions, the complainant prayed that he might be allowed to redeem the house and lot, with the funds in his hands belonging to the estate; that the property might be resold, under the order of the court; and that he might be permitted to retain, out of the proceeds of sale, the full amount paid by him under the judgment, "and be subrogated to the rights of the creditor, the said vendor".

"Exhibit C", above referred to as a mortgage from the intestate to Hitchcock, is in the following words:

"State of Alabama, ⎱ Whereas, John A. Hitchcock
   Mobile county.  ⎰ hath, on the day of the date hereof, bargained, sold, and, by warranty deed of himself and wife, duly conveyed to me, all that certain house and lot, located in the city of Mobile, which was *deeded* to said Hitchcock by Samuel Ferguson, by deed dated November 1st, 1850; (which deed is of record in the office of the judge of said county, in book No. 5, N. S., pages 61–63;) upon which property there is a mortgage, executed by said Hitchcock and wife, to said Ferguson, to secure the payment of three promissory notes, made by said Hitchcock, for the sum of $750 each,—the last two of which notes are unpaid, and one to fall due on the 1st November, 1853, and 1854, with interest thereon respectively from the 1st November, 1850: Now, this agreement witnesseth, as part consideration, as purchase-money by me paid said Hitchcock for said house and lot, I have agreed, and do by this writing agree with said Hitchcock, to

McNeill's Adm'r v. McNeill's Creditors.

allow said mortgage to remain as an incumbrance upon said property, until such time as the said last two notes shall be by me paid; and I do further agree to pay, cancel and take up said last two notes, at or before the maturity thereof, and to hold the said Hitchcock harmless in regard to the same. In witness whereof, I have hereunto set my hand and seal, this 20th January, 1853."

"D. S. McNEILL."

3. At the time of the intestate's death, he was indebted to McDowell, Withers & Co., commission-merchants in Mobile, in the sum of $15,000, or more, principally on account of moneys advanced by them to him. The complainant, after his appointment as administrator, shipped to said McDowell, Withers & Co. eighty bales of cotton belonging to his intestate's estate. This cotton was sold by said commission-merchants, and netted over $3,000; which sum they retained, without instructions from complainant, in part payment of the amount due to them from the intestate. After the estate had been reported and declared insolvent, the complainant advised said Mc-Dowell, Withers & Co. by letter of that fact, and demanded that they should pay over to him the proceeds of said cotton; but they refused to do so, "and claimed that they had a specific lien on said cotton, under and by virtue of a contract made with them by said intestate in his life-time, by which he gave them a lien on his growing crop for advances made by them to him, and under which they had made said application of said money." Being advised that said contract, if any such was made, was not binding as against the other creditors of the estate, the complainant instituted an action at law against said McDowell, Withers & Co., to recover the proceeds of said cotton; but the action was successfully defended, the validity of the contract and appropriation was sustained by the court, and judgment for the costs was rendered against the complainant. In reference to this item, the prayer of the bill was, "that the said eighty bales of cotton, or the proceeds thereof, as sold by said McDowell, Withers & Co., may be decreed to have been held by them under a specific lien or contract with the said D. S. McNeill

in his life-time, and as forming a credit on said account; and that complainant may not be in any other manner required to account for the same."

4. On the 29th September, 1851, the intestate purchased from Mrs. Elizabeth A. Givhan, executrix of the last will and testament of Thomas A. Givhan, deceased, a large tract of land, situated in Dallas county; received from her a conveyance, and executed to her his several notes for the purchase-money, together with a mortgage on the land to secure their payment; and, at the time of his death, two of these notes were due and unpaid. This tract of land was included in the complainant's petition, and in the order of sale granted by the probate court, as above stated; and was sold, under the order of the probate court, on the 13th January, 1855. Out of the proceeds of this sale the complainant paid in full the amount due to Mrs. Givhan; and he claimed in his bill a credit for the full amount of this payment, on the ground that the mortgage constituted a specific lien on the land, notwithstanding the insolvency of the estate, and that the purchaser at his sale might have compelled him to apply the proceeds of sale to the satisfaction of the mortgage.

5. In October, 1851, the intestate purchased a negro from one J. C. Hutchinson, and executed his two promissory notes for the amount of the purchase-money, with the complainant as his surety. After the death of the intestate, Hutchinson brought suit against the complainant on these notes, and recovered a judgment against him; which judgment the complainant paid, on the 4th January, 1855, after the estate had been declared insolvent. The prayer of the bill in reference to this item was, that the complainant might be subrogated to the rights of Hutchinson as a creditor of the estate, and might receive his *pro-rata* share of the assets.

6. On the 15th January, 1858, the probate court allowed, as valid claims against the estate, two judgments which Cook & Johnson had recovered against the complainant as administrator, and which were founded on debts contracted by the intestate in his life-time. The justness of these claims was denied by the complainant, and their

McNeill's Adm'r v. McNeill's Creditors.

payment resisted; and he also objected to their allowance by the probate court, because they had not been filed' as claims against the estate within nine months after the declaration of insolvency, and reserved a bill of exceptions to the ruling of that court in allowing them. Before the allowance of these two claims, the probate court had declared a dividend of forty per cent. in favor of the creditors of the estate, and the complainant had paid them that amount; and if these two claims were now allowed, it would be necessary to reduce this dividend, and to require re-payment from the other creditors. The complainant therefore asked the court to instruct him whether he should take an appeal from the probate to the supreme court, and prayed that the assets of the estate might be marshaled under the directions of the chancellor.

A demurrer to the bill, for want of equity, was interposed by several of the creditors, and was sustained by the chancellor; and his decree, dismissing the bill on that ground, is now assigned as error.

J. R. JOHN, for appellant.

BYRD & MORGAN, contra.

A. J. WALKER, C. J.—The first argument in favor of the equity of the complainant's bill is, that it is the privilege of an administrator, at any time before the concurrent jurisdiction of the probate court is put in operation, to seek from the chancery court instruction in the duties of his trust, and to make a settlement under the orders and decrees of that tribunal. Under our system, the chancery court retains its original jurisdiction over the subject of administrations; and it may be appealed to by a proper party, without the assignment of any special reason, until the concurrent jurisdiction of the probate court has attached.—Gould v. Hays, 19 Ala. 450; Horton v. Moseley, 17 ib. 794; Wilson v. Crook, ib. 59; Pearson v. Darrington, 18 ib. 350; Dement v. Boggess, 13 ib. 143; Blakey v. Blakey, 9 ib. 391; Hunley v. Hunley, 15 ib. 98; Waldron, Isley & Co. v. Simmons, 28 ib. 629; 1 Story's Eq. Ju. §§ 543-44-45; Cherry & Bell v. Belcher, 5 St.

& P. 133; Gayle v. Singleton, 1 St. 566. There is authority which may be construed as favoring the proposition, that an administrator may, as a matter of course, ask the aid of the chancery court in the execution and settlement of his trust.—Buccle v. Altco, 2 Vern. 37; Matthews v. Newby, 1 Ver. 133; Howard v. Howard, *ib.* 134; Mitford's Eq. Pl. (top page) 155–56. But that doctrine was found objectionable, because it enabled an administrator to delay the payment of just dues, and for other reasons; and it seems to have given place to the more just and reasonable doctrine, that an administrator or executor may go into chancery, "when he finds the affairs of his intestate or testator so much involved, that he can not safely administer the estate, except under the direction of a court of equity"; and that the court ought only "to interfere in behalf of an executor or administrator under special circumstances, where injustice to himself, or injury to the estate, may otherwise arise."—Morrice v. Bank of England, Cas. temp. Talb. 217–224; Brown v. McDonald, 1 Hill's Ch. (S. C.) 300; 1 Story's Eq. Ju. § 544; Toller on Ex. 455, book 3, chap. 10, § 2; 2 Lomax on Ex. (marg. page) 388, (top) 623; 2 Will. on Ex. 1624, note *g;* Willard's Eq. Ju. 560. Such seems to have been the view of the law taken by this court when it decided the cases of Trotter v. Blocker, (6 Port. 269,) and Sellers v. Sellers, at the last term. The equity of the complainant's bill, therefore, can not stand upon his right to come into equity, as a matter of course, for its aid and instruction, and we must inquire whether such special circumstances are averred as will give jurisdiction.

[2.] One of the special circumstances, upon which the complainant argues that the jurisdiction of the court may be predicated, is, that he, being misled by the magnitude of the estate, and his ignorance of the extent of his intestate's indebtedness, and not suspecting the insolvency of the estate, within eighteen months from the commencement of his administration, paid the full amounts of sundry debts with his own individual funds. Under our law, all claims against an estate, with a few exceptions, are required to be presented within eighteen months; the

executor or administrator is prohibited from giving, before the expiration of eighteen months, "a preference in the payment of any debt over others of the same class"; and he is protected against the rendition of judgments against him, until after the expiration of eighteen months.—Code, §§ 1883, 1742, 1917. The representative of an estate is thus favored with the means of ascertaining with sufficient certainty, in most cases, the condition of the estate, and relieved from the necessity of paying any debts, and prohibited from giving any preference among debts of the same class, within eighteen months. It follows, that if an administrator, within the eighteen months, pays in full a debt not within a preferred class, the estate being insolvent, he gives a preference in violation of law, and does so by making payment at a time when the law does not require it. The making of payment at such time, involves a hazard voluntarily assumed; and if loss results, he must sustain it, and can not distribute it among creditors of the estate, by obtaining an allowance to himself of the full amount of the claims so paid. The complainant is, therefore, not entitled to charge against the estate now, when it has been declared insolvent, the full amount of the claims discharged by him with his own funds during the eighteen months, and before the insolvency of the estate was discovered. His only right, as against the estate, is to stand substituted for the creditors whose claims he has discharged, as a claimant against the insolvent estate, and to take the same distributive share to which those creditors would have been entitled.—Watkins v. Dorsett, 1 Bland, 530; Collinson v. Owens, 6 G. & J. 4; Smith v. Hoskins, 7 J. J. Marsh. 502; Hearin v. Savage, 16 Ala. 286–294.

We perceive no reason why this substitution could not be as well recognized in the probate court, as in the chancery court. By the payment of the debts, the administrator became, in effect, the assignee of the debts he has paid; and the probate court may take cognizance of his rights as such, and give effect to them by making the proper allowance upon his settlement.—Graham v. Abercrombie, 8 Ala. 552. As the probate court is clothed with

the power requisite to afford the complainant all the relief to which he is entitled in consequence of the payment of claims against the estate, the fact of such payment is not a special circumstance upon which the jurisdiction of the chancery court can be predicated. And it is just and right that it should not be; for, if it were, the carelessness and recklessness of an administrator would be a reason for subjecting the creditors to the delay and expense of a chancery suit, instead of the cheap and expeditious proceeding in the probate court.

[3.] The bill is totally without equity as an application to redeem, or for authority to redeem, the land alleged to have been sold under Hitchcock's mortgage, because more than two years had elapsed before the filing of the bill, or the making of any application to redeem.—Code, § 2116. The payment by the complainant, as the surety of his intestate, of a part of the purchase-money of the land bought from Hitchcock, affords no reason for equitable interposition. By such payment, the complainant became a creditor of the estate, and is entitled to his *pro-rata* share with other creditors, which the probate court is fully competent to allow. Nor has the complainant any right of substitution to a lien of Hitchcock as vendor, who conveyed the land, for a part of the purchase-money paid by him as his intestate's surety.—Foster v. Trustees of Athenæum, 3 Ala. 302.

[4.] The bill also fails to make out a case for equitable jurisdiction upon the ground, that Hitchcock was a mortgagee of the land bought from him, and sold the land under his mortgage, and bought at his own sale. "Exhibit C", which is made a part of the complainant's bill, and is referred to as containing a copy of the mortgage under which the land was sold, shows that the mortgage upon the land was not given to Hitchcock, but was given by Hitchcock to one Ferguson, to secure the payment of the purchase-money due by the former to the latter; and that, upon the subsequent purchase by the complainant's intestate from Hitchcock, there was an agreement that the complainant's intestate should discharge the unpaid purchase-money due by Hitchcock to his vendor, and that

the land should remain bound by the mortgage. Hitchcock, therefore, was not a mortgagee of the land, and could not have been a purchaser at a sale made by himself as mortgagee.

[5.] If McDowell, Withers & Co. had a lien upon eighty bales of cotton, which they rightfully asserted by retaining the proceeds of the sale, it does not justify the complainant's resort to the chancery court. It is as competent for the probate court, as it is for the chancery court, to relieve him from the charge for the eighty bales of cotton, or their value, if he is entitled to such relief.

[6.] When it would promote the interest of an insolvent estate, the administrator has authority to discharge incumbrances upon the property of the estate. But he certainly can not charge the estate with removing an incumbrance, after the property so incumbered has been sold, when there is no liability upon him on account of the defective title, and when the estate is not interested in the removal of the incumbrance. The complainant, as administrator, sold, under an order of court, lands which were incumbered with a mortgage in favor of Mrs. Givhan. After this sale was made, he discharged in full the debts secured by the mortgage; and he now claims to have been justified in doing so, because there was a mortgage lien upon the land for the debts. When the sale was made under the order of court, nothing was sold save the interest of the estate, which was the equity of redemption in the land, or the land incumbered by the mortgage; and the maxim, *caveat emptor*, applied to the purchaser.—Duval's Heirs v. McLoskey, 10 Ala. 636; Doe v. McLoskey, 1 *ib.* 708; Perkins v. Winter, 7 *ib.* 855; Vaughn v. Holmes, 22 *ib.* 593. After the sale was made, the equity of redemption was vested in the purchaser, and the complainant was under no legal obligation to remove the incumbrance. In paying the entire debt secured by the mortgage upon the land, the complainant has acted without any legal authority, and is entitled to no relief as against the insolvent estate, or its creditors, on account of the fact that the debt was secured by a mortgage on the land.

Upon principles heretofore announced, the complainant must come in as a creditor.of the insolvent estate in the probate court, for the money paid by him, as the surety of his intestate, to Hutchinson.

[7.] It was manifestly improper to make the judge of the probate court a defendant, and we concur in and adopt the language of the chancellor disapproving it.

The bill contains no equity, and the decree of the court below is affirmed.