# Whorton, Ex'r *v.* Moragne *et als.*

*Settlement of an Administration.*

1. *A court of equity, in the absence of peculiar facts, will not arrest proceedings in a court of probate.*—A court of equity will not, at the instance of an administrator or executor, arrest proceedings commenced in a court of probate, for a final settlement of an administration, unless some specific fact or circumstance is shown, which renders the limited power of that court inadequate to a full and complete settlement of the trusts of the administration.

2. *When a bill is dismissed prematurely, nothing but its equity will be considered.*—When a bill is dismissed for want of equity before the cause was in condition to be heard on its merits, the appellate court will decide no other question than the equity of the bill, because no other was submitted to, and passed upon, by the chancellor.

3. *A court of probate has large powers over the assets of estates.*—The court of probate is invested with a large jurisdiction over the marshalling of the assets of deceased persons, compelling distribution and the payment of legacies. There may be instances in which it is necessary to invoke the larger powers of a court of equity to settle litigation, but such is not the case presented by this bill of complaint.

4. *A court of probate can not, of its own motion, convert an annual into a final settlement.*—When proceedings are instituted and conducted for an annual or partial settlement, the court of probate can not, of its own motion, convert it into a final settlement, and render a final decree.

APPEAL from the Chancery Court of Etowah.

Heard before the Hon. N. S. GRAHAM.

A bill of complaint was filed in the Chancery Court of Etowah county, by B. B. Whorton, one of the executors of

the last will and testament of William Whorton, for the purpose of obtaining a construction of the will and instructions as to the proper execution of its various provisions. It alleges that the decedent, William Whorton. a resident citizen of Etowah county, made on the 8th day of February, 1850, his last will and testament, and shortly thereafter died in St. Clair county, but in that part of it, which is now included in Etowah. The will was duly probated in the Probate Court of St. Clair county, and letters testamentary were granted to the complainant and Elizabeth Whorton, as executor and executrix in accordance with their appointment as such by the will. They executed bonds and entered upon the discharge of their duties. One Isaac Green, who was also named in the will as an executor, never qualified as such. In 1863 the said Elizabeth Whorton died.

One of the objects of the complainant's bill was to obtain the proper construction of the following clause of the will:

"Whereas, I have heretofore given to my sons, Benjamin B. Whorton and James Madison Whorton, and to my daughters, Louisa Green and Catharine Green, Mary Moragne's heirs, eighteen hundred dollars only, *property worth, in my* estimation, two thousand dollars each. Now, I will and desire that my wife, Elizabeth, pay to each of my other children, Richard Pinkney, Elizabeth, and Martin Van Buren, the said amount of two thousand dollars each as they become of age or marry, and the heirs of Mary Moragne two hundred dollars to make them all equal; and I further will, and bequeath my property remaining after the decease of my wife, Elizabeth, of all kinds and descriptions, to be equally divided between my said children, Benjamin B., James M., Richard Pinkney, Martin Van Buren, Louisa, Catherine, the heirs of Mary Moragne, share and share equal and alike." The questions suggested to the complainant by the foregoing extract were: "First, whether or not the said two hundred dollars, bequeathed to the Moragne heirs, is a personal trust, confined to the said Elizabeth, or attaches to the executorship of the said estate; and second, as to when it is or was payable, provided it attaches to the duty of your orator, as executor."

The testator died, seized and possessed of a valuable tract of land, lying in what is now Etowah county. And for the purpose of distribution among the legatees in the will, the executor obtained, in 1864, an order of sale from the Probate Court of St. Clair county; and on the 17th day of March, 1864, the said land was sold at auction, to one Joseph

L. Cunningham, as the highest bidder. The said Cunning-
ham never paid for the land, and the executor filed a bill to
enforce the vendor's lien. On the 28th of June, 1874, he
obtained a decree to sell the said land for the payment of
the purchase-money. In pursuance of this decree, the reg-
ister sold at public auction, for cash, the said land; and the
said executor, as the highest bidder, became the purchaser.

An inventory of the personal property belonging to the
estate of the testator was made and returned to the Probate
Court of St. Clair county. Under the authority of an order
granted by the said court, the personalty was sold on a
credit of twelve months; "The terms of the sale were that
the purchasers were to pay in Confederate money, or the
currency of the country at the time the notes fell due." At
the sale the executor bought some of the property. At the
same sales James M. Whorton, one of the legatees of said
estate, purchased property, and is still indebted to the exec-
utor for the articles bought by him. Subsequently to the
sale and purchase of a part of the personalty by him, the
said James M. Whorton migrated to Texas, and there died,
leaving a widow.

The bill alleges that the probate judge of St. Clair cited
the executor to make an annual settlement of the said estate.
And that in obedience to the said citation, the said executor
filed his account for an annual settlement; that this was so
advertised, and that "the contest filed by Green and Wil-
liams, parties claiming to be legatees, was to the account of"
the executor "for an annual settlement." That "no notice
was given to the executor either in writing or otherwise that
a final settlement and distribution would be made. The
evidence and argument of counsel were heard on said settle-
ment, and the court reserved its decision. The executor
then retired, and knew nothing of the decree of distribution
rendered by the court until long afterwards."

Upon these facts, after praying that process might be
issued to the legatees and distributees of the said estate, the
executor as complainant, prayed, among other things, that
the executor should be required "to file his account before
the register for final settlement, and that any interested may
contest the same as near as may be, under the rules and
practice of the Probate Court in such cases," and that an
injunction might be granted "against James M. Moragne,
enjoining him from proceeding further to enforce the final
settlement of your orator in said Probate Court until the
further order" of the Court of Chancery; and "that an

order be issued to the probate judge of St. Clair county to proceed no further in the matter of said final settlement in the Probate Court of said county until the further order of this court," &c.

On the final hearing of the case, the bill of the complainant was dismissed for want of equity.

JAMES AIKEN, for appellant.—1. It is admitted when the judge of probate has taken jurisdiction of the settlement of an estate, the executor must show some special grounds of equity to remove the case into chancery. This, the bill does in this case. The will is difficult of construction. It is doubtful what interest Mrs. Elizabeth Whorton took in the property—whether the absolute property, or a life estate. 34 Ala. 349, and authorities; 19 Am. Reps. 525; 13 ib. 23; 30 Ala. 404.

2. The legacy to the heirs of Mary Moragne *is a personal trust* conferred on Elizabeth, the co-executrix of appellant. 36 Ala. 153; 41 Ala. 649. She being dead, how is the personal trust to be executed? Does the personal trust attach to the appellant? Must that legacy be paid by the executor out of the assets of the estate? Or must he as executor have nothing to do with it? This is such a difficulty as will justify a recourse to equity.—35 Ala. 235. For this is such a pure *trust* a Court of Probate has no jurisdiction of it.—4 Port. 332; 8 Port. 380; 17 Ala. 214; ib. 170.

3. Another ground of equity is to set off the indebtedness of J. M. Whorton, one of the legatees, to the estate for property bought by him at the sales, against his legacy, he having removed to Texas, and died insolvent.—1 Roper on Leg. 924; 2 Story Eq. Jur. §§ 1434, 1444. What interest Mrs. Mattie Whorton, widow of J. M. Whorton, has in the proceeds of the land for dower in her husband's interest sold by appellant, is also a ground of equity. Is it not proper to bring all the parties before the court, and have these matters settled in one suit?—38 Ala. 35.

4. It is insisted that the settlement of October 17th, 1871, is and was only an *annual one*. That if the decree be final it is fraudulent for the reasons set forth in the amended bill. That it was an annual settlement will appear also from the citation.—Revised Code, § 2141. Under the pleadings in the Probate Court, the judge had no *jurisdiction* except to state the account between the appellant and the estate. He had no authority to decree a distribution.

[Whorton, ex'r v. Moragne et als.]

No Counsel for appellees.

BRICKELL, C. J.—A court of equity will not, at the instance of an administrator or executor, arrest proceedings commenced in a Court of Probate for a final settlement of an administration, unless some specific fact or circumstance is shown, which renders the limited powers of that court, inadequate to a full and complete execution and settlement of the trusts of the administration.—*Horton v. Mosely*, 17 Ala. 749; *Moore v. Lesseur*, 33 Ala. 237; *McNeil v. McNeil*, 36 Ala. 109; *Park v. Park*, ib. 132. If trusts created by the will, are to be executed; or if there are complicated matters of account, and a discovery is necessary; or if the affairs of the testator or intestate, are so much involved, that he can not safely administer without the aid of a court of equity, it is competent for him to institute a suit bringing all parties in interest before the court, and procure its directions.—1 Story's Eq. § 544; *McNeil v. McNeil, supra*; *Gould v. Hayes*, 19 Ala. 438.

2. The chancellor dismissed the bill for want of equity, before the cause was in a condition for a hearing on the merits, and in the absence of necessary parties, if the court should take jurisdiction of the administration. It is improper therefore for this court, on the present appeal, to decide any other question than the equity of the bill; no other having been submitted to, and passed upon by the chancellor.—*Sellers v. Sellers*, 35 Ala. 235.

The will of the testator recites that he had made advancements to several of his children, who are mentioned by name, of the value of two thousand dollars each, and to another, of the value of eighteen hundred dollars, and then proceeds : "Now, I will and desire that my wife Elizabeth pay to each of my other children," naming them, "the said amount of two thousand dollars each, as they become of age or marry, and to the heirs of Mary Moragne two hundred dollars to make them all equal. And I further will and bequeath my property remaining after the demise of my wife Elizabeth, of all kinds and description to be equally divided between my said children, Benjamin B., James M., Richard Pinkney, Martin Van Buren, Louisa, Catherine, the heirs of Mary Moragne, and Elizabeth, share and share, equal and alike." The wife of the testator, the appellant one of his sons, and a son-in-law, are appointed executrix and executors. Mary Moragne is the child of the testator, dying in his life, to whom he had advanced eighteen hundred dollars.

The first question of doubt or difficulty, in the construction of the will, which the bill suggests, is as to the quantity and quality of the interest taken by the testator's widow, and in reference to this, the advice and direction of the court is sought.   There is no averment however, that a controversy exists as to this question; or of the quantity and quality of interest which is claimed by the personal representative of the wife, or by her heirs or next of kin, if a claim is preferred. Nor is such personal representative, if there be one, or the heirs or next of kin, made parties to the bill, so that the court could properly adjudicate the question, if it is embarrassed with doubt and difficulty.   The court of probate is invested with a large jurisdiction over the marshalling of the assets of deceased persons, compelling distribution, and the payment of legacies.   The jurisdiction necessarily involves that of construing wills, and determining the quality and quantity of interest which passes to devisees and legatees.   There may be cases of adverse claims and interests, in which the parties necessary to a final and conclusive adjudication can not be brought before that court and a court of equity clothed with larger powers of bringing before it all parties claiming an interest, would of necessity intervene to quiet litigation.   It is possible, if in this case, the bill had averred that there was a controversy between the personal representative of the widow and her heirs, and the executor, and the legatees and devisees in remainder, as to the quality and quantity of the estate taken by the widow, and it had been shown all parties could not be brought before the court of probate, and affected by its decree, a case of equitable jurisdiction would have been presented.   But that is not the case made by the bill.   So far as is shown, all parties in interest concur, that her estate was limited to her life, and the assets in the hands of the executor are distributable to the remaindermen, according to the terms of the will.   If they do concur, it is not for the executor by presenting questions they may regard as unimportant, because their rights and interests are the same, whether the widow had a life interest, or a larger estate, to withdraw the administration from the court of probate.—*Harrison v. Harrison*, 9 Ala. 470.

4.   The questions supposed to be involved in reference to the gift of two hundred dollars to the heirs of *Mary Moragne*, the court of probate has full jurisdiction to adjudicate finally, in the proceeding they have instituted to compel the execu-

[Whorton, ex'r v. Moragne et als.]

tor to its payment, and of consequence there is no ground
for equitable interference in reference to it.

5. Without the consent of the personal representative of
James M. Whorton, the court of probate would not have
jurisdiction to set-off the debt due the executor for purchases
of property against the distributive share which may be
found due to him.—*Kidd v. Peters*, 13 Ala. 91; *Bondurant
v. King*, 15 Ala. 202. It may be that under the facts stated
in the bill, a court of equity would have jurisdiction as
against the representative of said James M., to set-off. the
debts due from him against the decree for his distributive
share, even after its rendition. That however is an equity
between the executor, and such personal representative, with
which the other parties in interest have no concern, and
which can not be invoked as a ground for equitable relief as
against them.

6. The sale of the lands was made under a decree of the
court of probate, in the life-time of James M. Whorton,
whether the sale was prior or subsequent to the death of
Catherine Green, is not shown by the bill; and there can be
no intendment that it was prior to her death, if such intend-
ment is necessary to support the equity of the bill. This
fact distinguishes the case from *Chaney v. Chaney*, 38 Ala.
35. The personal representatives of these parties alone can
recover of the executor the shares of the purchase-money of
the lands, to which on settlement, it may be ascertained,
they are entitled. Whether the widow of James M. can
claim that his share of the purchase-money shall stand in
the place of his interest in the land, and she shall be en-
dowed thereof; and whether a similar claim may be made
by the husband of Catherine Green, are questions in which
the appellant has no interest. These questions can arise
only after the personal representatives shall have received
the shares of the purchase-money to which their intestates
may be entitled, and they are proceeding to administer them.

7. The liability of the executor for his purchases at his
own sales, the Court of Probate has complete jurisdiction to
determine. If it is ascertained that he should be charged
with the actual value of the property purchased, and not
with the amount of his bids, made with the understanding
that payment should be made in Confederate treasury notes,
there is no question of fact, of greater difficulty of solution
than such as constantly arise in the settlement of estates.

8. The decree rendered against the executor on the settle-
ment in the Court of Probate, so far as it proceeds to distri-

bution, was unauthorized and should be vacated on proper application to that court. The proceedings were instituted and conducted for an annual or partial settlement, and it was not competent for the court, of its own motion, to convert it into a final settlement and render a final decree. *King v. Collins*, 4 Ala. 363. On final settlement, while it must be regarded as *prima facie* correct it will be competent for the executor, or for the other parties in interest to show errors in it, which can then be corrected.

We concur with the chancellor, that the bill in its present form, and with the present parties, is without equity. It is probable however, that there are facts and circumstances, which if properly presented, would render it indispensable to the protection of the appellant, and the prevention of injustice that a court of equity should take jurisdiction of the administration. We think therefore the decree of dismissal should have been without prejudice to the right of complainant to file a new bill, and the decree of the chancellor will be here corrected in that respect, and as corrected will be affirmed.