# Pryor v. Davis, Admr.

### *Final Settlement of Administration.*

I. *Payment of non-preferrd debt by administrator of insolvent estate.*—If an administrator, before the expiration of eighteen months from the grant of administration, pay in full a debt not within the preferred class, he does so at his peril, and, if the estate is afterwards declared insolvent, he cannot distribute his loss among the remaining creditors. His right in such case is limited to a substitution or subrogation to the rights of the creditor whose claim he has discharged, taking the share of the assets to which such creditor would have been entitled.

2. *Trust funds; liability for, not preferred claim against estate of decedent.*—Where an intestate in his life time so commingled trust funds with his own that they could not be identified in the hands of the administrator, and the estate is insolvent, the *cestui que trust* is not entitled to payment in full, but occupies the position of a general creditor.

3. *Redemption by administrator of insolvent estate of choses in action pledged by intestate; when he is entitled to credit for amount paid.*—Where *choses in action*, which were pledged by an intestate in his life time, are of greater value than the demand for which they were pledged, it is proper for the administrator to redeem them with funds of the estate in his hands, though the estate is insolvent, and he is entitled to a credit on a settlement of his own accounts for the amount so used.

4. *Payment by administrator of debt secured by mortgage on land of decedent sold under order of court; when not entitled to credit for.*—The sale of land of a decedent under a decree of the Probate Court being essentially judicial, there being no warranty of title in such sale, and the administrator being without authority to bind the estate by any agreement with the purchaser in reference to incumbrances on the land, he is not entitled to a credit on the settlement of his accounts for the amount paid by him in discharge of a mortgage debt on land so sold.

5. *Advice of counsel; when not protection to administration.*—The fact that an administrator acted under the advice of counsel is no protec-

tion to him when he oversteps the defined boundaries of duty and authority.

6. *Taxes on property belonging to estate of decedent; when not preferred claims against the estate.*—Where one pays taxes assessed after the death of a decedent on property in which he was interested, the debt due to such person on that account is not a preferred claim against the estate.

7 *Settlement of accounts of administrators; burden of proof as to contested items.*—When, on a settlement of his account, an administrator claims a credit the validity of which is disputed, the law casts on him the burden of supporting it, whatever may be its nature or character.

8. *Payment by administrator of debt for which his intestate was not liable; effect of.*—An administrator is not entitled to credit for the amounts of premiums on a policy of insurance paid by him, when his intestate was under no liability to pay such premiums, and had no interest in the policy.

9. *Compensation of administrator; basis of computation.*—Compensation is not refused a personal representative, unless he has acted in bad faith, or has been guilty of willful default or gross negligence; but, where the estate is insolvent, the compensation should not be computed on the basis of the full amount of non-preferred claims paid by the administrator; and credits claimed by him, but not allowed, should not enter into the computation.

10. *Allowance to administrator for attorney's fee.*—An administrator is entitled to an allowance for reasonable counsel fees paid by him for services rendered on his settlement in the Court of Probate; but he is not entitled to an allowance for such services rendered in improper, unsuccessful contests with creditors or distributees.

APPEAL from the Probate Court of Limestone.

Heard before the Hon. JAMES E. HORTON.

William H. Sykes died in Limestone County, Alabama, on February 10, 1892, and on April 4, 1892, the appellee, John H. Davis, was appointed by the Probate Court of said county administrator of his estate. On December 1, 1893, the administrator reported the estate insolvent; and on May 28, 1894, a decree was rendered declaring the estate insolvent, and directing the administrator to make a settlement. The administrator, pursuant to this order, filed his accounts for a final settlement. The appellants, as creditors of said decedent, filed objections to various items of credit claimed by the administrator. After hearing the evidence on the contest of the various items, the court rendered its decree overruling the objections to the several items mentioned below, and allowing the administrator the credit claimed by him for each of those items. The appeal is by the objecting credit-

ors, and they assign as error the allowance of said items. The following is a statement of the credits objected to and allowed, with a statement of the evidence bearing upon the several items, respectively; *First.* September 3, 1892, the payment of $250 to J. J. Turrentine. The deceased was a trustee in a general assignment of Lindsay & Co. As such, he collected $250, which he had not paid to the creditors when he died. Appellee paid it to Turrentine for the creditors of Lindsay & Co., out of the funds which the deceased had on hand. The money which deceased had collected as such trustee had not been kept separate from any other, and could not be identified from the other. *Second.* May 17, 1892, paid Bank of Athens $2,055.55. Prior to his death, deceased had given to the bank a note, which, with interest, on the date of its payment, amounted to that sum. To secure that note, he had delivered to the bank 25 shares of its stock, of the par value of $2,500, with other collaterals. Appellee testified that he and Frost, officer of the bank, sold this stock on May 5, 1892, for $2,500. Frost testified that he, as cashier of the bank, sold the stock, and that appellee had nothing to do with its sale; that he took up the note which he surrendered to appellee, and the account filed by appellee showed that on the 18th day of May, 1895, he charged himself as administrator with the proceeds of such sale; amounting to $2,500. *Third.* September 10, 1892, paid the Bank of Athens $2,622.22. On the 24th day of August, 1891, Sykes made a note to the Bank of Athens· for $2,500, and, to secure the same, executed a mortgage on two lots in the town. This note was due on the 6th day of October, 1891. In June, 1893, appellee, as administrator, filed his petition in the Probate Court to sell these lots for the payment of debts, and on the 29th day of July a decree of sale was rendered. On the 29th day of August, the lots were sold at public outcry, under that decree, and were purchased by one Hagan, as guardian of the minor children of deceased, for $7,000, which was paid. This sale was duly reported to the court on September 10th, and was confirmed, and the appellee directed to make a deed to the guardian. Appellee charged himself up with the proceeds of this sale, and paid to the bank, of it, the amount above stated. Against the objection of appellant, appellee was allowed to prove that there was an

agreement between him and the bank and Hagan that Hagan was to bid the full value of the land, and the appellee was to pay the mortgage debt out of it, and that, in making this agreement, appellee acted on the advice of his attorney; that at the time appellee paid the money, defendant had reason to believe that the estate was solvent, and that the price which the real estate brought was the full value of the same unincumbered; that the guardian of the minors had applied to the Probate Court to invest the sum of money which they had in this property, and the court had made an order permitting him to do so. *Fourth*. September 20, 1892. paid Mrs. Beasley $578.05. This payment was made on a note made by intestate before his death, to secure which he had deposited with Mrs. Beasley a note for $500 on one Carter as collateral. Appellee paid Mrs. Beasley the money, took up Carter's note, subsequently collected the latter note, and charged himself with the amount on this final settlement. *Fifth*. September 26, 1892, paid Mrs. Jackson $170.90. This was also a payment of a note executed by intestate, which was secured by the note of Witty & Co., which had been deposited with Mrs. Jackson as collateral. Appellee paid this note, took up the Witty & Co. note, subsequently collected the same, and charged himself up with the amount so collected, which was a good deal in excess of the amount paid. *Sixth*. May 26, 1890, paid W. B. Russell $7. In support of this payment, it was shown that intestate, at the time of his death, had an interest in certain property in St. Joe, Lauderdale county; that the taxes on that property for the year 1892 were paid by Russell; that the share of intestate was repaid to Russell by the appellee. *Seventh*. This exception arises out of the allowance of various payments of assessments on a mutual insurance policy issued by the Knights of Honor to one B. P. Harris, in favor of his wife, Mollie. The evidence showed that Harris owed intestate $700; that it was agreed between them that, if intestate would keep up the premiums during the life of Harris, then he was to have the amount of the policy when Harris died; that the wife verbally assented to this agreement; that Harris was living at the time of the assessment, and intestate had, in his lifetime, paid the premiums maturing up to the time of his death; that payments were made to the officers of the lodge. It is

[Pryor v. Dauis, Admr.]

also shown that the society had not sanctioned or ratified the change or beneficiaries of the policy, and that, under the rules of the society, the policy could not be transferred to a creditor. *Eighth.* This head embraces two credits which were allowed,—one upon the payment of state and county taxes for the year 1892, on real estate belonging to the intestate, amounting to $99.75 ; the other was the payment of taxes to the town of Athens for the same year, amounting to $32.22. The proof showed that the taxes were assessed on this property after the death of the intestate. *Ninth.* This was an allowance of commissions, amounting to $496.11; these being 2½ per cent. on the receipts as shown by the debit side of the account, and 2½ per cent. on the disbursements which were allowed by the court, including the items hereinabove mentioned as having been objected to. *Tenth.* This was an allowance of $100 for attorney's fee for representing the appellee in the insolvency proceedings, and making this final settlement.

McCLELLAN & McCLELLAN, for appellants, cited Code, §§ 2078 to 2081, 2222 *et seq.*, 36 Ala. 109 ; 60 Ala. 201 ; 84 Ala. 336 ; 40 Ala. 421; 27 Ala. 130, 636 : 1 Ala. 708 ; 7 Ala. 855 ; 22 Ala. 593 ; 61 Ala. 340.

TOMPKINS & TROY, and W. T. SANDERS, *contra*, cited *McLeod v. Evans*, 57 Am. Rep. 287 : *Peak & Ellicott.* 46 Am. Rep. 90; 5 Wait's Actions & Defenses, 172; 18 Am. & Eng. Ency. of Low, 722 ; *Baldwin v. Hatchett*, 56 Ala. 461 ; 3 Brick. Dig p. 478, § 366 ; Schouler on Executors and Administrators, §§ 305, 542 ; *Ripley v. Sampson*, 10 Pick. 373 ; *Moody v. Hemphill*, 71 Ala. 172 ; 11 Am. & Eng. Ency. of Law, 1109 ; *Kites v. Church*, 142 Mass. 586 ; *Pearson v. Darrington*, 32 Ala. 227 ; *Bendall v. Bendall*, 24 Ala. 295 ; *Henderson v. Simmons*, 33 Ala. 291 ; *Smyley v. Reese*, 53 Ala. 89 ; *Clark v. Eubanks*, 80 Ala. 584.

BRICKELL, C. J.—The statutes declare all the property of a decedent, except as is otherwise provided, is charged with the payment of his debts, and for that purpose may be sold, if necessary. With much of particularity, the order in which the debts are to be paid is prescribed, and the personal representative is prohibited from giving preference of payment, before the expira-

tion of eighteen months from the grant of administration.—Code, §§ 2078–80. Upon claims or demands against the decedent, the personal representative can not be sued until after six months, nor can judgment be rendered against him, until eighteen months after the grant of administration.—Code, § 2263. The order of payment of debts is not only particularly described and declared; a want of authority in the personal representative to depart from or disturb it, is also declared, and all necessity or reason for such departure or disturbance is avoided by the protection afforded him against the rendition of judgment, until the period for the presentation of claims has expired. "It follows," as was said in *McNeill v. McNeill*, 36 Ala. 117, "that if an administrator, within eighteen months, pays in full a debt not within the preferred class, the estate being insolvent, he gives a preference in violation of law, and does so by making a payment when the law does not require it. The making of payment at such time involves a hazard voluntarily assumed; and if loss results, he must sustain it, and can not distribute it among the creditors of the estate, by obtaining an allowance to himself of the full amount of the claims so paid." The same principle is announced in *Hearrin v. Savage*, 16 Ala. 286; *Byrd v. Jones*, 84 Ala. 337; *Jackson v. Wood*, MSS. The only right of the personal representative, making such payments, as is settled by these authorities, is, substitution or subrogation to the rights of the creditors whose claims he has discharged, taking the share of the assets to which they would have been entitled.

It is insisted the claim paid Turrentine, due from the intestate as the assignee or trustee in a general assignment, because of its trust character, should be withdrawn from the operation of this principle. If the funds the intestate received in his relation of trustee had been preserved, distinguishable from his own funds, capable of identification, they would not have passed to the personal representative as assets for administration. His duty in reference to them would have been that of a depositary—the custody and preservation of them in their condition of identification, and the delivery of them on demand of the succeeding trustee or assignee. But this was not the condition of the funds; in his life, the intestate had commingled them with his own funds, con-

verting himself into an absolute debtor, instead of a trustee bound only to the duty of keeping them safely, and on demand distributing them to the *cestuis que trust*. The Court of Probate erred in allowing the administrator a credit for this payment.

An executor or administrator has the full legal title to the *choses in action* of the deceased, and is charged with the duty of collecting and reducing them to possession; he may transfer, release, compound or discharge them, as if he was the absolute owner, subject only to his liability to answer to creditors and distributees, for improvidence in the exercise of the power—for the want of the care and diligence, the incident of his relation.—3 Brick. Dig. 464, § 139. If the choses in action are subject to pledges, liens or charges, created by the decedent in his life, he takes the legal title *cum onere*; but he is not freed from all duty or liability in respect to them. He may compel the creditor holding them to their care, and the prompt application of them to satisfy the pledge, lien or charge; and if more should be derived from them than is necessary to satisfaction, he must be diligent in its collection. He succeeds to the right of redeeming them, or of removing the lien or charge, and he is bound to prudence and diligence in the exercise of the right. If he has funds in his hands, which may be so employed, and the *choses in action* are of greater value than the demand for which they may be pledged, or the lien or charge to which they are subject, it is his duty to redeem them, or to remove the lien or charge. This duty he is bound to exercise with the care, prudence and diligence, the inseparable incident of his trust relation, and for his failure to exercise it, he would be personally answerable. The value of the *choses in action*, redeemed from the Bank of Athens, from Mrs. Jackson, and Mrs. Beasley, exceeded the debts for the payment of which they were pledged. This being true, the administrator, having funds which could be so applied, properly redeemed them. He accounted for the full value of the *choses in action*, and was properly allowed a credit for the monies used in redemption. Thereby benefit, and not injury, resulted to the creditors generally.

The taxes paid were not assessed prior to the death of the intestate, and were not preferred claims. A part of them seems to have been assessed on real estate of which

the administrator had made sale under the decree of the Probate Court. If this is true, they were a burden the purchaser was bound to remove.

There is no principle upon which the rulings of the Court of Probate, in the allowance to the administrator of the debt secured by the mortgage of the real estate, can be sustained. Whether an administrator, if a necessity exists that he should take possession of the lands, and subject them to the payment of debts, may not, to render them more available, remove incumbrance upon them, is not the inquiry. An order for a sale of the lands had been obtained; the sale had been effected, reported to and confirmed by the Court of Probate. Sales of lands, under the decree of the Court of Probate, are essentially judicial. The court, not the personal representative, is the vendor. His only agency is that of an officer or special agent, designated by the law for special purposes and clothed with special trusts. To the sale the maxim *caveat emptor* applies. There is no warranty of title, and if the title proves unsound, the purchaser has no ground of complaint. The present case is not distinguishable from *McNeill v. McNeill*, *supra*, where the precise question we are considering was decided. The payment in full of the mortgage debt was in ease of the purchaser of the lands—it relieved them from an incumbrance, improving the title, converting it into a title superior to that of which the court had decreed a sale, and of which he had become a purchaser, at the expense of the creditors generally. The agreement or arrangement between the mortgage creditor, the administor and the purchaser, is not of consequence. All combined, could not change the character of the sale and purchase —could not by any private arrangement convert it from a judicial into a private sale. In the making of the sale, as we have said, the administrator was but a special agent or officer. His warranty of title, if untrue, or his false representations in regard to it, it may be, would be ground for resisting the confirmation of the sale, but, after confirmation, would not avail to rescind the purchase, or to defeat the payment of the purchase money. *Fore v. McKenzie*, 58 Ala. 115; *Bland v. Bowie*, 53 Ala. 152; *Cruikshank v. Luttrell*, 67 Ala. 318. Nor is the advice of counsel material. If the inquiry was as to the good faith and diligence of the administrator in the per-

formance of duty in the scope of his authority, it may be that he acted under the advice of counsel would be material. But there is no protection to him when he oversteps the defined bóundaries of duty and authority.

When an administrator claims a credit, the validity of which is disputed, the law casts on him the burden of supporting it, whatever may be its nature or character. There was no duty or liability resting on the intestate to pay the premiums, keeping alive Harris' membership of the Knights of Honor, and the policy of insurance attached to it. The intestate, in his life, may have paid the premiums, but it was not because of a legal liability to make them; nor was it because he was the pledgee or assignee of the policy of insurance. As there was no liability resting on the intestate to pay these premiums, and as he was without interest in the policy of insurance, the administrator exceeded his authority in continuing to make them, and for them he should not have been allowed a credit.

Compensation is not refused a personal representative, unless he has acted in bad faith, or has been guilty of willful default, or gross negligence. This has long been the settled rule in the Court of Probate and the Court of Chancery.—1 Brick. Dig. 978, § 907. There was no room, in this case, for the imputation of bad faith to the administrator, or of that degree of negligence which is termed gross. All that can be said is that he may have erred in his judgment as to the condition of the estate, and the error led him into a line of conduct rendering him liable to creditors. The error has involved him in liability, but it has not resulted in loss to the creditors. The court did not err in the allowance to him of the statutory compensation, except that it should not have been computed on the basis that he had paid out the full amount of the claims of the creditors he had preferred; nor should the claims we have declared are not to be allowed enter into the computation.

An administrator is entitled to an allowance for reasonable counsel fees paid by him, for services rendered on his settlement in the Court of Probate.—1 Brick. Dig. 979, §§ 924, *et seq*. But he is not entitled to an allowance for such service rendered in improper,

unsuccessful contests with creditors or distributees. If by his own conduct he necessitates the contest, and is unsuccessful, he must bear the costs personally. What were the services rendered by the attorney, for whose compensation the Court of Probate made an allowance—whether the allowance was reasonable—whether it comprehended services rendered in the contests with the creditors which we have declared improper, is not disclosed by the evidence found in the record. These inquiries will arise hereafter, and we have stated the principle by which the court must be guided.

The decree of the Court of Probate is reversed, and remanded for further proceedings in conformity to this opinion.