# Shelton *v.* Carpenter *et al.*

*Bill in Equity by Creditors of Insolvent Estate, against Executor and Purchasers, alleging Waste and Devastavit, and seeking to enforce Vendor's Lien on Land.*

1. *Sale of lands by executor, under power, for payment of debts. and for distribution.* A will contained these clauses: "In the first place, I desire and will that my executors, or administrators, shall pay off all my debts, of every kind and nature; and if necessary to effect this, I will them to sell as much of my property as may be sufficient to do the same. Then, I wish, and hereby authorize them, to sell at public auction, on a credit of one, two, and three years. all my property of every kind, real and personal; purchasers to give notes, with two or more approved securities, bearing interest from date;" and the proceeds of sale, when collected, after setting aside a specified sum to be invested for the benefit of the widow during her life, were to be distributed among his children: *Held,* that the power to sell for the payment of debts was distinct from the power to sell for distribution, &c., and was not subject to the same directions as to terms; and that, the terms of sale, when made for the payment of debts, being discretionary with the executor, it was not essential to its validity that security should be required from a solvent purchaser.

2. *Executor's power over choses in action; devastavit, and who is chargeable with.* An executor or administrator, notwithstanding his large discretionary power over the choses in action in his hands for administration, can not apply them in payment of his individual debts, without committing a *devastavit,* for which the person who receives them, having notice of his abuse of authority, is answerable; but this principle does not apply to a debt for which, although the executor was the principal debtor, the testator was also bound as his surety.

3. *Notice of protest.*—Notice of the protest of a bill of exchange, deposited in the post-office of the city or town in which the indorser resides, and in which the bill is payable and protested, is sufficient to charge him, unless it is shown that the holder also resided there.

4. *Transfer of note by executor; payment to him in Confederate treasury-notes.* An executor, or administrator, has power to transfer a promissory note, assets of the estate, in payment of a debt due from the decedent; and it was also within

[Shelton v. Carpenter et al.]

his power, having sold property of the estate during the late war, to receive payment of the purchaser's note, before its maturity, in treasury-notes of the Confederate States.

5. *Insolvent estate; contribution between creditors.*—A creditor of an insolvent estate, whose claim has accrued since the distribution of the assets, or whose disabilities have been since removed, may recover his *pro-rata* share of the assets from another creditor, who has received, through the decree of the court, a greater dividend than.he would have been entitled to receive if the plaintiff's claim had been included with the other debts (Code of 1876, § 2585); but the statute does not apply to a creditor who has been paid in full by the personal representative before the estate was reported or declared insolvent.

6. *Cross-bill.*—When a bill is filed by creditors of a decedent's estate, which has been declared insolvent, against the personal representative, and against persons who have purchased the lands from him, charging a devastavit by them, and seeking to have the lands sold for the payment of the purchase-money alleged to be unpaid; the widow, being made a defendant as a legatee under the will, can not maintain a cross-bill for an assignment of dower in the lands.

APPEAL from the Chancery Court of Greene.

Heard before the Hon. A. W. DILLARD.

The original bill in this case was filed on the 7th September, 1871, by John C. Shelton, as a creditor of the estate of Willis Crenshaw, deceased, on behalf of himself and the other creditors of said estate, or so many of them as might come in and contribute to the expenses of the suit, against John N. Carpenter individually, and as executor of the last will and testament of said Willis Crenshaw; and against the widow and children of said Crenshaw, as legatees under his will; and against the administrator and heirs-at-law of Duncan Dew, deceased, who had purchased some of the lands belonging to said Crenshaw's estate, from the said executor; and against John P. Pippin and W. H. Pippin, who had also purchased some of said lands from said executor; and against Thomas Dougherty, as a sub-purchaser from said Pippin. It sought to charge said executor with waste and *devastavit*, in the management of the said estate, particularly in the matter of the sale of lands to said Dew and Pippin, to hold them accountable as having knowingly participated in such *devastavit* and subject the lands to sale for the payment of the purchase-money.

Willis Crenshaw, the testator, died in said county of Greene, the place of his residence,in August, 1862; and his last will and testament was there duly admitted to probate, in September, 1862, and letters testamentary thereon granted to said John N. Carpenter, one of the persons therein named as executor. Said will, a copy of which was made an exhibit to the bill, contained the following provisions. "In the first place, I desire and will that my executors, or administrators, shall pay off all my debts, of every kind and nature; and if necessary to effect this, I wish them to sell as much

[Shelton v. Carpenter et al.]

of my property as may be sufficient to do the same. Then, I will, and hereby authorize them, to sell at public auction, on a credit of one, two, and three years, all my property of every kind, real and personal; purchasers to give notes, with two or more approved securities, bearing interest from date. After disposing of all my property, in the above manner, I will that my executors, or administrators, for the benefit of my wife Amanda, set aside the sum of $5,000, to be placed at interest, well secured; the interest of which sum is to be applied annually to her support and maintenance; and at her death, the said sum of $5,000 is to revert back to my estate. And as I have heretofore given off to John N. Carpenter and my daughter, Amelia R. Carpenter, his wife, the sum of $8,000, I will that each of my heirs draw the same amount from my estate, so as to place them all on an equality; and then I will that the balance of my estate be divided equally among all my heirs, share and share alike. And I hereby appoint John N. Carpenter and Anderson Crenshaw, my son, my executors or administrators, without requiring them to give bond; and also constitute and appoint John N. Carpenter and Anderson Crenshaw guardians to my minor children."

At the time of his death, the said testator owned two plantations in said county, or tracts of land, a large number of slaves, a residence in the town of Eutaw, and other property, the aggregate value of which was between $120,000 and $150,000. Mrs. Amanda Crenshaw, his wife, was at that time insane, and had been for many years, and was confined in a lunatic asylum; and she continued in that condition up to the filing of the bill in this case. On the 22d December, 1862, said executor sold the lands, after due advertisement, at public auction, on a credit of one, two, and three years, with interest; Duncan Dew becoming the purchaser of one tract, and John P. and W. H. Pippin of the other tract; each executing their notes for the purchase-money, in accordance with the terms of the sale, and being put in possession by the executor of the lands bought by them respectively. At the time of the sale, or prior thereto, Dew asked the executor, if the purchase-money could be paid in debts against the testator; and the executor answered, that payment could be made in that way. The land bought by Dew, at $11.10 per acre, aggregated $14,980; and that bought by Pippins, at $6.00 per acre, aggregated $2,700. The sale was reported by the executor to the Probate Court, on the 19th January, 1863, as having been made by him "in pursuance, and by direction of said will;" but the report does not state for what purpose the sale was made. In payment of Dew's first note, before its maturity, he surrendered to the executor three claims

[Shelton v. Carpenter et al.]

which he held against the testator's estate : 1st, a note, or due-bill, which, with interest, amounted to $112.66: 2d, a draft for $1,138.29, drawn by the testator on said John N. Carpenter, and by him accepted; and, 3d, a draft for $3,718.25, drawn by said Carpenter on Thos. H. Herndon, payable to said testator, and accepted by Herndon for his accommodation. In payment of the second note, he assumed a debt (or a part thereof) which the testator owed one Gowdy, or Gowdry, and which he paid in Confederate money; and he paid the third note to the executor, also before maturity, in Confederate treasury-notes. Pippin's first note was transferred by the executor to one Perkins, at its face value, in payment of a debt which he held against the estate, for the same amount; and it was paid to said Perkins, after the close of the war, in United States currency. The second and third notes of Pippins were paid to the executor, before their maturity, in Confederate treasury-notes, which he used in paying debts against the estate. The slaves were never sold, but were emancipated by the result of the war.

The testator's estate was declared insolvent on the 13th August, 1866. John C. Shelton, the complainant in the suit, who resided in Fredricksburg, Virginia, filed as a claim against the estate a promissory note for over $6,000, given by the testator on the 21st January, 1862, for money loaned before that time ; on which note an action had been commenced against the executor, and a judgment was obtained on the 18th April, 1867, for over $8,000. The bill alleged that the estate was not in fact insolvent, or was rendered insolvent by the waste and *devastavit* of the executor, in which said Duncan Dew and Pippins knowingly participated, and that said executor was insolvent ; and prayed that an account of the debts might be taken, and that the lands might be sold for the payment of the purchase-money, and for general relief. Answers were filed by Pippins, Dougherty, and the representatives of Dew, denying the charges of fraud and collusion, and insisting on the validity of their purchases of the lands ; and a cross-bill was filed in the name of the widow, asserting her right of dower in the lands, and asking that it might be allotted to her. A demurrer to the cross-bill was filed by the complainant in the original bill, and by the other defendants, but was overruled by the chancellor, who held that, under the facts above stated, the court would elect for the widow, she being still a lunatic, to dissent from her husband's will, and claim dower in the lands, or compensation in lieu of dower, to be paid out of the unadministered assets. He also held, on final hearing on pleadings and proof, that the complainant was not entitled to any re-

[Shelton v. Carpenter et al.]

lief against Duncan Dew's estate, or the lands purchased by him at the executor's sale, because the purchase-money went in extinguishment of the debts of the estate to an equal amount, and therefore the estate was not injured by the transactions between said Dew and the executor; but, as against John P. and W. H. Pippins, and the lands bought by them, including the portion which they had sold Dougherty, the lands were subjected to the vendor's lien on account of the last note, which was paid before maturity in Confederate money; and he rendered a decree accordingly.

From this decree the complainant now appeals, and here assigns as error the overruling of his demurrer to the cross-bill, the decree rendered on the cross-bill, and the dismissal of his bill as against the personal representative and heirs of Duncan Dew. By consent, there is a cross-assignment of errors on the record by John P. and W. H. Pippins, presenting the correctness of that part of the decree which granted relief against them.

R. H., R. I. & G. L. SMITH, for the appellant Shelton.—1. The complainant is a creditor of Crenshaw's estate; his debt is not barred, and he has received nothing on it. Dew also was a creditor, and he has received payment of his debt in full. On these facts, aside from any other aspect of the case, the statute gives the complainant a right of action against Dew, if Crenshaw's estate is solvent.—Code of 1876, § 2585. The whole amount of the debts did not exceed $35,000; Dew's is claimed to have been $4,969.20, and the complainant's is $8,110.89; hence, he is entitled to recover of Dew, at least, $1,550.

2. An executor cannot set off a debt due to him as executor against a debt due from his testator. The statute expressly declares that the debts must be mutual—that is, they must be strictly between the same parties.—*Rapier v. Holland*, Minor, 176; 1 Stewart, 529; *Swilley & Riley v. Lyon & Baker*, 18 Ala. 559; *McKinley v. Winston*, 19 Ala. 301; *White v. Word's Adm'r*, 22 Ala. 444; *Fry v. Evans*, 8 Wendell, 530. This principle shows the illegality of the transaction, by which the executor received the draft for $3,718.25, not then due, in part payment of Dew's first note, and allowed him to assume a part of the debt to Gowdy in payment of his second note, also before its maturity; and the relations of Dew to the estate, to the extent of these two items, together amounting to $8,687.45, are the same as if these transactions had never taken place. Dew was bound to know that the transaction as to the Gowdy debt was illegal, and can claim no advantage from it.

3. Dew's third note was not payable until December, 1865, and was payable in funds current at its maturity; and the executor had no authority to receive payment, before its maturity, in currency which was valueless. The executor sold the lands under the will, and he had no authority to sell on any other terms; and Dew was bound to know this fact. This note, then, stands as if it had never been paid at all. The same principle applies to the note of Pippins last falling due, as to which the chancellor rightly ruled that, as against the estate, it had never been paid.

4. But the two larger drafts used by Dew in payment of the first note, amounting to $4,856.54, were in fact the debts of Carpenter, the executor, and not of Crenshaw, his testator. That the acceptor of a draft is the party primarily liable, see Story on Bills, § 325 ; *Inge v. Br. Bank at Mobile*, 8 Porter, 108. It is presumptive evidence of a debt due from the acceptor to the drawer ; and the acceptor must remove this presumption, and show that he accepted for the accommodation only of the drawer, before he can recover against the latter. This has not been done, and the draft stands as the debt of Carpenter, the acceptor ; and the presumption of law is strengthened by the fact that Carpenter was the commission-merchant of Crenshaw. The other draft, of which Herndon was accommodation acceptor, stands on the same ground, as between Carpenter and Crenshaw. These drafts being the individual debts of the executor, he could not pay them with the assets of the estate ; and the person receiving such payments from him, with the knowledge of the misapplication, is equally with him liable for the *devastavit*.—2 Williams on Executors, 1630, note ; *McLeod v. Drummond*, 17 Vesey, 167 ; *Rogers v. Fort*, 19 Geo. 96 ; *Hargrove v. Batty*, 19 Geo. 132 ; *Brush v. Ware*, 15 Peters, 93.

5. It is no answer to these propositions to say, that the insolvency of the estate was caused by the emancipation of slaves, which was the result of the war, and for which the executor is not responsible. It was the duty of the executor to sell the slaves for the payment of the debts, before proceeding to sell the lands ; and in first selling the lands, he was guilty of a breach of duty and a *devastavit*.—Rev. Code, §§ 2079, 2084 ; 2 Wms. Ex'rs, 1630 ; 4 Bacon's Abr. 100. If he had executed the trust according to the law and the terms of the will, the slaves would have been sold, instead of perishing on his hands, the debts would all have been paid, and the estate would have been solvent. Moreover, Dew's debts were paid by the executor shortly after the probate of the will, instead of waiting eighteen months for the presentation

of claims; and this renders him liable as for a *devastavit.* 15 Peters, 93, *supra.*

6. The demurrer to the cross-bill ought to have been sustained. The claim set up in it had no connection with the original suit. The widow had no claim to dower, on account of the provision made for her by the will.—*McLeod v. McDonnell,* 6 Ala. 243; *Hilliard v. Binford,* 10 Ala. 991; *Collins v. Carman,* 5 Md. 535; 2 Scribner on Dower, 473. She did not dissent from the will, and, being insane, could not; and the right to dissent is personal, and cannot be exercised for her by the court. If entitled to dower, it was in the lands, and not out of the estate.

W. & J. WEBB, and JOHN T. TAYLOR, for the administrator and heirs of Duncan Dew, deceased.—1. The bill is not framed to set aside the sale of the lands by the executor, and to have them sold to pay the claims of creditors; but, conceding and asserting the validity of that sale, it seeks to re-sell the lands for the payment of the purchase-money. The material question, if not the only one, so far as the personal representative and heirs of Dew are concerned, is as to the validity of the payment and settlement of his notes as against the complainant. The sale was made by the executor for the payment of debts, and his discretion as to terms, &c., was not restricted or limited in any manner by the will. It was part of the contract between him and Dew, that debts against the estate would be received in payment; and there could be no objection to this arrangement, since it carried out the very purpose for which the sale was made. The agreement being a part of the contract, it cannot be repudiated, while affirming the validity of the sale: the whole contract is either good or bad, and must be affirmed or repudiated as a whole.—*Crawford v. Barkley,* 18 Ala. 270; Story on Agency, §§ 250–53; 28 New York, 289; Story on Conflict of Laws, §§ 317, 332. The notes for the purchase-money were payable to the executor, and were assets in his hands. He was the only person authorized to settle, receive payment, or give discharges for them, or any other *choses in action* in his hands; and a payment to him was an extinguishment of the debt, in the absence of fraud, or collusion, between him and the debtor. The charge of fraud and collusion being unsupported by the evidence, the validity of the payments cannot be questioned.— *Waring v. Lewis,* 53 Ala. 615; *Beattie v. Abercrombie,* 18 Ala. 18; 2 Williams on Executors, 805, 807, 810, note *c*; 14 Wendell, 90; 4 Hill, 492; Perry on Trusts, 457, § 511. In order to perform his duty in paying debts, an executor or administrator must sell

[Shelton v. Carpenter et al.]

property in many instances; and no one would deal with him, if liable afterward to be called to account, for subsequent events and acts, over which he had no control.— 2 Williams on Executors, 796, 798, note 1; Hill on Trusts, 342; 3 Mason, 218; 13 Pick. 397.

2. None of the objections to the transactions between Dew and the executor can be sustained. That the effect was to pay Dew's debts in full, does not prevent the extinguishment of these debts, or affect the validity of the transaction, though the executor could only claim, on the future insolvency of the estate, a credit for the proper *pro rata.*—*McNeill v. NcNeill,* 36 Ala. 109; *Bates v. Vary,* 40 Ala. 437; *Prater's Adm'r v. Stinson,* 26 Ala. 456. The payment in Confederate money is immaterial. The sale was not made under an order of court, and is not governed by the principle applicable to judicial sales.—44 Ala. 91; 46 Ala. 598; 8 Wallace, 14; 14 Wallace, 661; 66 N. C. 590. It must be remembered, too, that the sale was made in 1862, when Confederate money was the only currency; and that the money so received was used in paying debts against the estate to an equal amount. That the last notes were collected before they were due, is equally immaterial. The notes bore interest from date, which was equivalent to a sale for cash; and the money was applied in payment of debts. The intent and purpose of the power of sale having been accomplished, equity will not scrutinize the mode and manner in which it was done.—Story's Equity, § 174.

3. As to the draft for $3,375, the notice of protest, sent through the post-office, was sufficient, since it is not shown that the holder also resided in Eutaw.—*Bibb v. McQueen,* 42 Ala. 408; 43 Ala. 455. As it was in fact Crenshaw's debt, he was not entitled to notice.—*Evans v. Norris, Stodder & Co.,* 1 Ala. 511.

4. When the testator died, in 1862, his estate was entirely solvent, though he owed some debts; but the war was then raging, and on its results depended the value of property, and the solvency of estates and individuals. Dew and Shelton each held debts against the estate. In view of the uncertainties of the future, Dew chose to take the lands in payment of his debt, though at an increased price. Shelton declined to do so, refused to receive Confederate money, took no steps to protect himself, and awaited the course of events. He can not now complain of the consequences of his own *laches.*—40 Ala. 442; 41 Ala. 700; 45 Ala. 205.

W. COLEMAN, for John P. Pippin and W. H. Pippin.—In the absence of any will, an administrator has the right to

settle, receive payment, discharge, or dispose of the *choses in action* in his hands; and any transaction with him, as to them, can only be avoided on the ground of fraud or collusion.—*Woolfork's Adm'r v. Sullivan*, 23 Ala. 548; *Waring v. Lewis*, 53 Ala. 615; *Jones v. Blalock*, 31 Ala. 183; 7 John. Ch. 154; 4 Hill, N. Y. 507. Here, the executor, in addition to his general powers, was authorized and required, by the terms of the will, to sell the property, and to pay the debts of the estate; and he exercised the power in good faith, and with great discretion. The money collected from the purchasers was used in paying the debts, as the testator contemplated and directed; and they cannot now be held responsible, on account of results brought about by subsequent events, with which they had no connection.

E. MORGAN, for John N. Carpenter, the executor.—The charge of fraud against the executor, and of collusion between him and the purchasers at his sale, was necessary to give equity to the bill, and seems to have been inserted for that purpose; but it is entirely unsupported by any evidence. A complete answer to the charge, if any answer is needed, is found in the fact, shown by the testimony, that the executor was personally absent, being in the army during the whole war, and did everything through his agent and attorney, to whom his business was intrusted. Results have justified the wisdom with which the estate was managed, and its present condition is caused solely by the results of the war. In the payment of debts, no discretion was left to the executor: the duty was imposed on him, to sell the property, and pay the debts; and he performed that duty in good faith, and for the benefit of all parties interested in the estate. If the complainant was not paid, it is because he would not receive Confederate money. Whatever may be his rights or remedies against other creditors, he can not complain of the executor, who has fully accounted for all assets that came to his hands.

E. MORGAN, and W. & J. WEBB, for Mrs. Amanda Crenshaw, the testator's widow, argued the several questions presented by her cross-bill, as to her right of dower in the lands, and the power of the court to elect for her; questions not decided by the court.

BRICKELL, C. J.—The power of the executor to sell for the payment of debts, is distinct from, and must not be confounded with, the power to sell for the purpose of raising an interest-bearing fund for the benefit of Mrs. Crenshaw,

during her life, and for the purpose of making a distribution according to the terms of the will. The powers are intended for wholly distinct purposes, and are expressed in different terms. The first is general—to sell any part of the estate of the testator; and the terms of the sale, whether for cash, or on credit, or, if on credit, the time of credit, and whether security shall be taken from the purchaser, and the character of the security, are committed to the discretion of the executor. The debts of the testator having been paid, power is then conferred to sell all the property remaining, on a credit of one, two, and three years, taking notes from the purchasers, bearing interest, with two sureties. The lands were sold by the executor, for the payment of debts, under the first power; and it is not an objection to the validity of the purchase by Dew, that surety was not required and taken on his notes for the purchase-money. The executor was not bound to take such surety, or to any form of sale. His authority was as full and complete as that of the testator himself; and his duty was, for the discharge of which in good faith and with reasonable diligence he was responsible, to obtain a fair and full price, securing payment of the purchase-money. Dew's solvency may have been, and we may say was certainly, so unquestionable, that it would have been a mere form, or idle ceremony, to have demanded surety of him. The matter of taking surety rested in the discretion of the executor—it was not imposed as a condition on which the power of sale should be exercised, and the validity of the sale is not affected, because surety was not taken on Dew's notes.—*Huger v. Huger*, 9 Rich. Eq. 217.

2. The facts relied on to avoid the payment of the notes by Dew to the executor, are these : The lands were sold on a credit of one, two, and three years, for equal annual installments, with interest from the day of sale. The first installment was paid with the claims which Dew held against the testator, two of which were bills of exchange drawn by the executor, and indorsed by the testator. There is some evidence which tends to show that the bills were drawn for the accommodation of the testator, and that he was in fact the primary debtor; but we do not regard it as sufficient to overcome the presumption arising from the paper. One of these bills wanted a few days of maturity, at the time of the settlement of the first installment between Dew and the executor, and the other had been protested some months previously. The second note, or installment, was paid to a creditor of the testator, to whom the executor had transferred the note. The third was paid, before its maturity, in Confederate treasury-notes. It is insisted that the two bills of exchange

were the debts of the executor, which he had no authority to receive in payment of the purchase-money, amd that receiving them was a *devastavit*, in which Dew participated, and for which he is responsible.

While the power of an executor, or administrator, over the *choses in action* in his hands for administration, is of necessity large, and he may be dealt with generally as if he was the owner of them, he is without authority to apply them in payment of his individual debts. Whoever accepts them as security for, or in payment of such debts, has full notice of the abuse of his fiduciary power and duty, and must be answerable for them.—*Swoope v. Trotter*, 4 Port. 27 ; *Waring v. Lewis*, 53 Ala. 615 ; *Van Hoose v. Bush*, 54 Ala. 342. The bill which had reached maturity, though the executor was the principal debtor, was also the debt of the testator ; and it cannot, with any propriety, be said that Dew was receiving, or the executor applying the assets, in payment of his own debt, so far as that bill is concerned. The principle to which we have adverted applies. only when the assets are employed to pay debts of the executor, with which the testator is not chargeable, and for which the assets are not bound.

3. The bill which had matured, it is said, was not a debt against the testator, because he had not been duly notified of its protest for non-payment. Notice of dishonor, or a reasonable excuse for its absence, is necessary to fix the liability of an indorser of a bill of exchange. The notice of dishonor was given the testator, by depositing it in the postoffice at Eutaw, the place of his residence, and the place of payment and protest of the bill. The notice was sufficient, unless it had been shown that Dew, the holder, resided in Eutaw, a fact of which there is no evidence.—*Carson v. State Bank*, 4 Ala. 148 ; *Bibb v. McQueen*, 42 Ala. 408. The liability of the testator having been fixed by protest and notice, Dew could have compelled payment from the executor, and the payment was a proper application of the assets, and in no sense a *devastavit*.

4. The executor had power to assign and transfer the second note to Gowdry, a creditor of the testator ; and it certainly is not a fact with which the appellant has any concern, whether Dew paid it in Confederate treasury-notes or in gold and silver. It was also within the power of the executor to receive Confederate treasury-notes, in payment of the note last due, even before its maturity.—*Van Hoose v. Bush, supra.*

5. The appellant insists, that the estate being insolvent, and Dew having received his debts in full, he has a right to

recover of him such portion as would have been applied to his debts, if the money had been paid to the executor, and had remained in his hands for distribution to the creditors. The right is supposed to be conferred by the statute (Code of 1876, § 2585), which authorizes a creditor of an insolvent estate, whose claim is not barred, to recover of any person who has received any dividend of such estate, such an amount of the dividend as will be in the same proportion his claim bears to the debts of the estate. The statute is a part of the system defining the mode of ascertaining the insolvency of the estates of decedents, the ascertainment of the claims of creditors, the distribution to them of the assets, and the final settlement and discharge of the administrator or executor. It is required that all claims shall be filed in the Court of Probate, within nine months after the declaration of insolvency, or after the same accrue, or they are forever barred. There is a saving in favor of infants, and persons of unsound mind, who are allowed nine months after the removal of their disabilities to file claims.—Code of 1876, §§ 2568-69.

When an estate is decreed insolvent, exclusive jurisdiction of all claims against the decedent is transferred to the Court of Probate, and they cease to be the subject of a suit, at law or in equity, against the personal representative. He is without authority to pay any creditor, nor can he, by any acknowledgment or admission, relieve the creditor from the bar the statute creates, if he fails for nine months by filing his claim to commit it to the exclusive jurisdiction of the Court of Probate. The distribution of the assets to creditors is through the decree of the court, and when the personal representative, in obedience to the decree, applies them, he is discharged from liability. There are claims, which the statute does not bar, though not filed : claims which do not accrue until the bar is complete, and claims in favor of infants and persons of unsound mind. The purpose of the provision of the statute, on which the appellant relies, is, that these creditors, having filed their claims within nine months after their accrual, or the removal of their disabilities, shall receive their just proportion of the assets. Of the personal representative, there can be no recovery ; for he has applied the assets under a decree of a court of competent jurisdiction, and in obedience to the statute. The recovery is from creditors who have received dividends under the decree of the court. The statute does not authorize a recovery from a creditor to whom the personal representative, having full and complete power to pay debts, and who, as to creditors, is presumed to know how much he can safely

pay, has paid more of the assets than the condition of the estate justified. For such payments, in excess of the assets, he is responsible to other creditors; or, rather, he can claim only to be substituted to the place of such creditors, and take the share of the assets it may be ascertained can be properly applied to the payment of such debts.—*McNeill v. McNeill,* 36 Ala. 109; *Hearrin v. Savage,* 16 Ala. 286.

The decree of the chancellor, dismissing the bill as to the personal representatives and heirs-at-law of Dew, must be affirmed.

The payment by Pippin to the executor, of the notes he gave for the purchase-money of the lands, was not, as the chancellor decreed, invalid. There was no want of power in the executor to accept Confederate treasury-notes in payment; and it was on this ground, and not because of any evidence of a want of good faith in the purchaser or the executor, the chancellor proceeded in rendering the decree.— *Van Hoose v. Bush,* 54 Ala. 342. The decree against John Pippin, William Pippin, and Thomas Dougherty, must be reversed on the cross-assignment of errors by them, and a decree here rendered dismissing the bill as to them.

6. The cross-bill of Mrs. Crenshaw, claiming an assignment of dower, should not have been entertained. She is not a party to the original suit, in any other capacity than as a legatee under the will of her husband. There is no antagonism between her claim to be endowed of the lands of her deceased husband, and the rights asserted by the complainant as a creditor. If she is entitled to dower, it is a right to be asserted against the personal representative, the heirs, or devisees, and the purchasers of the lands; and may be asserted without any diminution of the rights of the complainant, or any other creditor. The dower interest in the lands was not sold or conveyed by the personal representative, nor had he authority to sell and convey it; and compensation for it cannot be claimed from the assets in his hands.— *Williamson v. Mason,* 23 Ala. 488-504. A cross-bill can be entertained, only on matter growing out of the original bill, and not on rights or equities which have no connection with, and are independent and distinct from it.—3 Dan. Ch. Pr. 1742; *Nelson v. Dunn,* 15 Ala. 513. We intimate no opinion as to her right to dower, as the question does not properly arise in the cause. The decree on the cross-bill must be reversed, and a decree will be here rendered dismissing it at the costs of the next friend therein.

The appellant Shelton must pay the costs of the appeal by Pippin and others, and one-half of the costs of his own appeal; the other half will be paid by the next friend of Mrs,

[Lavender v. Hall.]

Crenshaw. The cause must be remanded to the Chancery Court of Greene.