# Childers *v.* Bowen & Walthall.

### *Action on Common Money Counts.*

1 *Agency; transactions between agent and third person having knowledge of agency.*—When an agent has money belonging to his principal, with power to lend it out, or to use it for the benefit of his principal in the purchase of supplies; and he lends it to a person who has knowledge of the agency, and of the ownership of the money; the borrower can not allow the agent, in payment of the loan, to purchase supplies for his own consumption; and if he does so, he is chargeable as a trustee *in invitum*, and liable to an action for money had and received at the suit of the principal.

APPEAL from the City Court of Selma.

Tried before the Hon. JONA. HARALSON.

This action was brought by J. O. Childers, against the partners composing the late firm of Bowen & Walthall; and was commenced on the 5th April, 1877. The original com-

[Childers v. Bowen & Walthall.]

plaint contained the common money counts, claiming, $844.50 as due by account on the 26th September, 1874, on an account stated on that day, and for money had and received on the 1st November, 1873; and an amended complaint was filed, claiming $844.50 as due on an account stated on the 1st November, 1873. A bill of particulars, furnished on demand, stated that the action was brought "to recover the proceeds of about thirteen bales of cotton, delivered to the defendants by George A. Mason, for and on account of the plaintiff, in the fall of 1873, prior to 1st November, and sold by them on the 1st November, 1873, for the net amount of $844.50." The defendants pleaded the general issue, and the cause was tried on issue joined on that plea.

On the trial, as the bill of exceptions shows, the parties waived a jury, and submitted the case to the court for decision. The plaintiff adduced evidence tending to show "that he was, in 1872-3, an invalid, and unable to attend to his own business; and that N. Tate was his general agent, and attended to all his business during that period;" and said Tate thus testified, as a witness in his behalf: "The plaintiff and George R. Mason were interested in farming together in the spring of 1873; but, not liking this arrangement, I closed it out by taking said Mason's note for $844.50, with a mortgage on his crop to secure the same. Bowen & Walthall were Mason's commission-merchants. Walthall asked me, in the summer of 1873, how Mason was going to run, he being my son-in-law. I told him that I had loaned Mason the amount of the Childers money. I agreed to loan it to them. He said it was all right. I told him, at that time, that I held the mortgage for plaintiff. The cotton was grown by Mason, and was delivered by him to Bowen & Walthall in the fall of 1873. Walthall said he could get seventeen cents for the cotton. I told him to sell at discretion; but he held on, and sold for thirteen cents. Walthall acknowledged that the defendants were accountable for the whole debt ($844.07), and agreed to account for that sum, with interest from the 1st January, 1874, when the cotton was sold, although it did not sell for that amount. Walthall said he took said cotton from Mason to pay said debt, and assumed the debt, and acknowledged having received the cotton in the fall of 1873." The note of Mason was not produced, but the mortgage was, which was dated April 20, 1873, and which recited that Mason had "borrowed from N. Tate, for J. O. Childers, one thousand dollars, more or less, by promissory note bearing date January 1st, 1873; said money to be advanced, at divers times, to purchase supplies to run my crop this year."

Walthall, one of the defendants, thus testified as a witness
VOL. LXVIII.

in their behalf: "Bowen & Walthall received the cotton in question from Mason, and sold it as his commission-merchants, in his name, and on his account, and carried the proceeds to his credit on their books. As commission-merchants of said Mason, they held a second mortgage on said cotton. I had been informed by Mason and Tate, some time during the year 1873, that Mason owed Tate, as agent for Childers, $844.50, on account of moneys which Tate, as such agent, had loaned Mason, and that a mortgage on the cotton had been taken by Tate to secure the payment; and it was agreed between them and Bowen & Walthall that Bowen & Walthall should account to Tate for that sum. Afterwards, according to that understanding, Bowen & Walthall charged Mason, and credited Tate on their books, with that sum. At the time this arrangement was entered into, and the cotton was received, Tate did not owe Bowen & Walthall any thing. It was the understanding between Tate and Bowen & Walthall that this money should be put and remain on their books, at interest, to the credit of Tate, and that Tate could draw on the fund, and that he and Childers would get groceries from them. Tate said he would give Childers orders on it; and when Childers obtained goods on such orders, they were to be charged to Tate, and the bill rendered to him, with the words on it 'For J. O. Childers,' so as to designate the items of account for Childers. Afterwards, Tate did draw on said fund, and obtained goods, and gave orders to Childers, in all amounting to $1,267.14. Childers in person brought orders from Tate on this fund, and bills of the goods furnished on said orders were, in accordance with instructions from Tate, returned to him by the hands of said Childers, or were delivered to Childers for Tate." A copy of the account of Bowen & Walthall against Tate was produced, showing goods furnished to the amount of $1,267.14, and a balance of $57.58 in Tate's favor, after crediting him with $844.50 as the proceeds of the sale of cotton received from Mason; and their books of original entries, corresponding with this account, and some of the orders drawn by Tate in favor of Childers, were also produced. Walthall further testified, "that the account on their book was always kept in the name of Tate, and the bills were rendered in his name; that Bowen & Walthall never had any account or other transaction of any kind with Childers, and his name nowhere appears on their books; either as debtor or creditor; that they only knew Tate in the transaction, and charged every thing to him, whether ordered for himself or Childers; and that no objection to this course, by either Childers or Tate, was made while the transactions were going on."

[Childers v. Bowen & Walthall.]

Tate being insolvent, the defendants claimed a credit for the full amount of their account against him, against their liability for the $844.50, the proceeds of sale of the cotton; while the plaintiff, admitting that he had received goods to the amount of $473.87 on the orders of Tate, claimed judgment against the defendants for the balance of such proceeds. On all the evidence adduced, which the bill of exceptions purports to set out in full, the court rendered judgment for the defendants; to which judgment the plaintiff excepted, and which he now assigns as error.

WHITE & WHITE, for appellant.

BROOKS & ROY, *contra*.

STONE, J.—For a proper determination of this case, it is only necessary that we go back to the time when the money sued for was deposited with Bowen & Walthall. It is not denied, and, under the evidence, can not be denied, that the money deposited was the property of the plaintiff, Childers, and that Bowen & Walthall knew it. They received the money, or, rather, the right to use it, from Tate, the agent of Childers, but they received it as Childers' money. Tate, the agent, had, the year before, lent the money to Mason, acting in the matter as the agent of Childers; and the money was repaid to him through Bowen & Walthall. They knew the consideration of the indebtedness—knew it belonged to Childers, and knew that in the loan and collection Tate was acting only as the agent of Childers. This being the case, no matter how general or large the powers of Tate may have been, they were only the powers of an agent, and conferred on him no ownership in the money. His powers, in the absence of express authority therefor, were to employ the money for the benefit of his principal, not for his own use or benefit. He could, as the testimony tends strongly to show, lend the money, or employ it in purchasing supplies for his principal. He could collect, and effect a further loan, if necessary. But, as general agent, without express authority from his principal, he could not extinguish or absorb the debt, in the purchase of supplies for his own consumption. This, on his part, would be a violation of the trust and confidence repared in him; and parties dealing with him, knowing the ownership of the money, and his relations to it, became participants in his breach of duty, and must make good his default, which they have thus aided in creating.

Tate held the money in trust for Childers, and when he employed it for his own private purposes, he committed a

[Malone & Foote v. Hill et al.]

breach of the trust; and when Bowen & Walthall, with knowledge of the trust, aided him in the breach, and thus appropriated the trust money, they placed themselves in Tate's shoes—made themselves trustees *in invitum*, and an action for money had and received will lie against them. *Swoope v. Trotter*, 4 Por. 27 ; *Van Hoose v. Bush*, 54 Ala. 342; *Shelton v. Carpenter*, 60 Ala. 201; Perry on Trusts, § 225 ; Story on Agency, §§ 127, 228; Story's Eq. Jur. §§ 422, 423, 533, 1257, 1258, 1261 c, 1261 d ; *Gullett v. Lewis*, 3 Stew. 23 ; *Craig v. Ely*, 5 St. & Por. 354 ; *Cost v. Genette*, 1 Por. 212 ; *Cook v. Bloodgood*, 7 Ala. 683.

What we have said above, must be confined to the facts shown in this record. If Childers authorized Tate to use this money in the purchase of supplies for himself, or if, with knowledge he was so using it, he ratified such use, then he can not recover. Of course, proper purchases made for Childers were rightful, and defendants are entitled to a credit therefor.

Reversed and remanded.