# Naftel v. Osborn.

### *Final Settlement of Decedent's Estate.*

1. *Proper allowances to administratrix under Sec. 2098 Code.*—Where an administratrix completes and gathers a crop commenced by her intestate, rent of the land, the cost of completing harvesting, and selling the crop, such as labor, board of hands, team and its keep, hauling and charges for preserving the property, are proper allowances to her under section 2098 Code, before any preferred creditor can claim payment out of the proceeds of the crop.

APPEAL from the Probate Court of Crenshaw.

Tried before Hon. B. A. WALKER.

Proceeding by Marietta E. S. Osborn as administratrix of the estate of D. L. Osborn, deceased, for the settlement of her administration. One J. H. Naftel contested the claims of credit made by the administratrix. The facts sufficiently appear in the opinion.

M. W. RUSHTON, for appellant, cited *Byrd et al. v. Jones, Admr.* 84 Ala. 336; *Shelton v. Carpenter,* 60 Ala. 201; *Bates v. Vary,* 40 Ala. 421; *Kimball v. Moody,* 27 Ala. 130; *Smith v. Bryant,* 60 Ala. 235.

I. H. PARKS, *contra.* (No brief came to the hands of the reporter.)

STONE, C. J.—D. L. Osborn died May 25, 1890. Marietta E. S. Osborn was appointed administratrix of his estate July 4, 1890. There appears to have been a will, but it cuts no figure in the case. In October, 1891, the administratrix reported the estate insolvent, and at the November term, 1891, of the Probate Court it was declared insolvent. In December, 1891, the administratrix filed her account current of her administration, in which she charged herself with about $910 assets received, and claimed credits for about the same, or a larger sum paid out. The settlement was had at the March term, 1892. Naftel, the appellant, who is admitted to have been a creditor of the estate, but for no particular amount, appeared on the settlement, and contested the account as stated. There was no exception filed to the correctness of the debit side of the account, and no attempt

made to fix a greater amount of assets in her hands than she charged herself with.    The entire scope of the exceptions was, that she had claimed credits for disbursements she had no authority to make.    Objections and exceptions were filed to each and every credit claimed, something over one hundred in number.

When Mr. Osborn died he was engaged in planting, and also had a small store.    Some of his planting was on rented land, and his plantations appear to have been cultivated with hired labor, which was supported by him.    It also appears that he had one or more hirelings, or superintendents looking after his various interests.    When he died he had on hand a growing, unfinished crop, and much outstanding, unsettled business.    It is common knowledge that, in this climate, on May 25, plantation crops have been planted, have come up and are growing, but are not matured.    Much labor remains to be done in their cultivation and harvesting.    Our statute, Code of 1886, § 2098, provides that "any crop commenced by a decedent may be completed and gathered by the executor or administrator, and the expenses of the plantation being deducted therefrom, is assets in his hands, and may be sold by him at private sale, either in or out of the State."

We have several times had occasion to consider this statute.    Our rulings have been that the administrator is not absolutely bound under all circumstances to undertake the completion of an unfinished crop.    He is clothed with some discretion.    If in the exercise of a sound judgment he is clearly satisfied that the completion would entail a loss rather than yield a profit, he should not expend money in the adventure.    But there is much risk in the abandonment of a crop thus circumstanced.    And this is true, even when no one is interested in the crop save the decedent himself.    If the crop be on rented land, or be cultivated on shares, or be under a lien created by the deceased in his lifetime, we can conceive of circumstances which might suggest a continued cultivation of the crop which would not prevail in other conditions.    We unhesitatingly declare that under the circumstances shown in this record, it was the duty of the administratrix to complete the cultivation, and to gather the crop. *Blair v. Murphree*, 81 Ala. 454.

Having ascertained that the administratrix simply did her duty in this case, to what extent are the proceeds of the crops assets of the estate?    The statute answers this question.    It is not the gross proceeds.    "The expenses of the plantation (must be) deducted therefrom," and only the

[Naftel v. Osborn.]

surplus becomes assets.—*Mitcham v. Moore*, 73 Ala. 542; *Loeb v. Richardson*, 74 Ala. 311; *Tayloe v. Bush*, 75 Ala. 432; *Marx v. Nelms*, 95 Ala. 304; *Byrd v. Jones*, 84 Ala. 336; *McNeill v. McNeill*, 36 Ala. 109; *Shelton v. Carpenter*, 60 Ala. 201; *Smith v. Bryant, Ib.* 235.

All proper expenses incurred for labor and its subsistence, for team and its subsistence, for hauling, for rent of land, for taxes, and every thing connected with the completion of the crop, its harvesting and sale, were proper allowances to the administratrix, before any creditor, even a preferred one, could claim payment. So, the reasonable expenses of the administratrix in caring for and preserving the property, and in conducting the administration and bringing it to a settlement, were equally proper allowances to her. And she had a clear right to retain for all these just demands out of any assets that passed through her hands, with the exception that her right can not prevail over any lien or prior title created by law, or by the act of the decedent in his lifetime. It was and is paramount to any claim a preferred creditor can assert.

The only doubt we have had as to the correct allowance made to the administratrix by the Probate Court is in reference to the item of $54.55 paid to Barton, voucher No. 15. If that claim, or any part of it, was for services rendered in the lifetime of Mr. Osborn, then to that extent the payment and allowance were improper. The record, however, fails to show that any part of that claim accrued during Mr. Osborn's lifetime, and hence fails to show that the Probate Court erred in its allowance.

If we could revise it, the record shows an error committed against the administratrix. She claimed credits for $10.00 paid Dr. Horn, and $3.00 paid Staggers. These credits were disallowed by the Probate Court. The court then charged these two items, amounting to $13, against the administratrix, thus swelling the assets by that sum. She had already debited herself with the entire amount of assets she had received, and it was improper to charge this sum against her a second time. Being refused a credit for its disbursement, that reduced the credit side to the proper sum, and the correction of the account should have stopped there. We have made these remarks, not because we propose to correct the court's ruling. This we can not do, because she has not appealed. Our only purpose is to prevent a possible repetition of the error. The judgment of the Probate Court is affirmed.